IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN J. FLYNN, JAMES BOLAND, GERALD )
O'MALLEY, KEN LAMBERT, GERARD SCARANO, )
H.J. BRAMLETT, EUGENE GEORGE, )
ROBERT HOOVER, MATTHEW AQUILINE, )
GREGORY R. HESS, MICHAEL SCHMERBECK, )
VINCENT DELAZZERO, BENJAMIN CAPP, )
and WILLIAM MCCONNELL, )
As Trustees of, and on behalf of the )
BRICKLAYERS & TROWEL TRADES INTERNATIONAL )
PENSION FUND, )
  620 F Street, NW, Suite 700 )
  Washington, DC 20004-1604 )
  (202) 783-3788, )
 )
        Plaintiffs, )
 )
    v. ) No. 08-CV-0588 (PLF)
 )
JOHN DANIEL BERICH, INDIVIDUALLY, )
  5775 Oak Creek Lane )
  Greenwood Village )
  Littleton, CO 80121, )
 )
TODD BERICH, INDIVIDUALLY, )
  3424 East Jamison Place )
  Littleton, CO 80122, )
 )
INTEGRITY EQUIPMENT COMPANY, INC., )
  19661 Cypress Drive )
  Morrison, CO 80465, )
 )
        Defendants. )
 )

### FIRST AMENDED COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendants, allege as follows:

## CAUSE OF ACTION

### Jurisdiction and Venue

1. This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and the provisions of Section 4301 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1451. This action arises under the laws of the United States, specifically Sections 4201, 4212(c), and 4301(a)(1) and (b) of ERISA, 29 U.S.C. §§ 1381, 1392(c), and 1451(a)(1) and (b). Pursuant to Section 4301(c) of ERISA, 29 U.S.C. § 1451(c), jurisdiction is therefore conferred on the Court.

2. The IPF is administered in the District of Columbia. Venue is conferred on this Court pursuant to Section 4301(d) of ERISA, 29 U.S.C. § 1451(d), which provides:

> An action under this section may be brought in the district where the plan is administered or where a defendant resides or does business, and process may be served in any district where a defendant resides, does business, or may be found.

### Parties

3. Plaintiffs are John J. Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Robert Hoover, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero, Benjamin Capp, and William McConnell, all of whom are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Plaintiffs bring this action in their respective capacities as fiduciaries on behalf of, and for the benefit of, the participants and beneficiaries of the IPF.

4.  The IPF has been assigned, and is authorized to pursue, any and all claims relating to Withdrawal Liability owed by Dan Berich, Inc. ("DBI"), on behalf of the Northwest Bricklayers Pension Plan, pursuant to an assignment of claims.

5.  Defendant John Daniel Berich ("Dan Berich") was the controlling owner and officer (President and CEO) of DBI, a building and construction industry employer maintaining offices and conducting business in the state of Colorado. DBI has employed members of the International Union of Bricklayers and Allied Craftworkers or its affiliates ("Union").

6.  Defendant Todd Berich, son of Dan Berich, was the principal officer (President) of DBI since 2001, and the person controlling the affairs of DBI. Todd Berich is also a controlling owner and officer of Berich Masonry, Inc. ("BMI"), a building and construction employer maintaining offices and conducting business in the state of Colorado.

7.  Defendant Integrity Equipment Company, Inc. ("Integrity") is a company maintaining offices and conducting business in the state of Colorado. Todd Berich is the controlling owner and officer of Integrity.

### DBI Owes Withdrawal Liability

8.  From the time of its incorporation in 1960, DBI, acting by and through its authorized agents or officers, was signatory to various collective bargaining agreements ("CBAs") with the Union. For over four decades, DBI's contracts with the Union governed the terms and conditions of employment of DBI's Bricklayer employees.

9.  DBI terminated its CBA with the Union and withdrew from the IPF in 2003, thereafter conducting the same business "non-union."

2466528

10. Pursuant to Section 4203(b) of ERISA, 29 U.S.C. § 1383(b), a building and construction industry employer "withdraws" from a plan if the employer ceases to have an obligation to contribute under the plan and either (i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or (ii) resumes such work within five years after the date on which the obligation to contribute under the plan ceases.

11. By notice dated March 16, 2004, the IPF determined that DBI had withdrawn from the IPF within the meaning of Section 4203(b) of ERISA, 29 U.S.C. § 1383(b), by continuing to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required. The IPF notified DBI of its liability under Sections 4201 and 4219 of ERISA, 29 U.S.C. §§ 1381 and 1399 ("Withdrawal Liability") of $504,279.00, and demanded payment as provided by Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1).

12. Pursuant to the notice sent by the IPF, DBI was obligated to pay to the IPF $6,427.71 on or before May 16, 2004. Thereafter, DBI was obligated to pay $6,427.71 per month for 101 additional months, with a final payment of $42.95.

13. The Northwest Bricklayers Pension Plan assessed DBI's Withdrawal Liability as $103,942.00, and made demand for this sum.

14. On May 10, 2004, DBI commenced making periodic Withdrawal Liability payments to the IPF, as set forth in paragraph 12 above.

15. On June 11, 2004, DBI requested review of the IPF's Withdrawal Liability assessment pursuant to Section 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A). After receiving the

IPF's written response to its request for review, DBI sought to initiate arbitration of its dispute over the Withdrawal Liability assessed. *See* Section 4221(a) of ERISA, 29 U.S.C. § 1401(a).

16. The parties selected an arbitrator, but DBI subsequently advised IPF that it did not wish to pursue arbitration. Instead, DBI continued to make its monthly payments until it ultimately ceased making any further payments to the IPF in May 2006. It also ceased making payments to the Northwest Bricklayers Pension Plan.

### Defendants Devise a Scheme to Deny the IPF Withdrawal Liability

17. On or about the time that DBI began making Withdrawal Liability payments to the IPF and the Northwest Bricklayers Pension Plan, Defendants Dan and Todd Berich devised an elaborate scheme to elude DBI's Withdrawal Liability obligations. The scheme began when the Defendants siphoned off assets from DBI's line of credit, and culminated in DBI's petitioning for bankruptcy in September 2006. To date, DBI has paid only $154,265.04 of the $504,279.00 in Withdrawal Liability owed to the IPF, leaving a balance owed of $350,014. The participants and beneficiaries of the IPF have been deprived of these moneys needed to fund current and future benefits, to which they are entitled.

18. The first step in the Berich scheme occurred on May 1, 2004, when Dan and Todd Berich (on behalf of DBI) executed irregular promissory notes to themselves, in the amounts of $114,192.83 and $183,979.95, respectively. The notes were due on May 15, 2005, and included interest, at the rate of 11 percent per annum. Dan Berich executed Todd Berich's promissory note for DBI and Todd Berich executed Dan Berich's promissory note for DBI. The notes appeared on DBI's books as reimbursement for "loans." These payments made by DBI to Dan and Todd Berich were not "loans," but improper transfers of capital to DBI's owners, who authorized the payments to themselves.

19. In February of 2005, two disbursements from DBI's Key Bank operating account, in the amounts of $124,302.90 and $200,268.83, were made to Dan and Todd Berich, respectively. The funds for these disbursements were drawn from DBI's line of credit, and consisted of the principal amounts of the May 1, 2004 promissory notes plus 11 percent interest through February 10, 2005. Prior to the two disbursements, DBI's line of credit had ranged from $65,000 to $110,000. As a result of the disbursements, DBI's line of credit grew to $405,000.

20. Also in February of 2005, Todd Berich formed a dummy company called Integrity, created by him for the sole purpose of acting as a conduit of DBI assets. Todd Berich owns 60% of Integrity's stock.

### The Beriches Siphon Off Over $400,000 of DBI Assets

21. In March and April 2005, Integrity issued two checks to DBI for $39,330.00 and $366,690.00, allegedly for the purchase of DBI's equipment at liquidation value. There is neither a contract nor a bill of sale for this total purchase of $406,020.00. The transaction was structured so that Integrity could purchase DBI's business without compensating DBI for its goodwill, while making the transaction appear to be legitimate.

22. Dan and Todd Berich used the $406,020.00 from the sale of DBI's equipment to pay down DBI's line of credit. The scheme also included Integrity's "leasing" of the purchased equipment back to DBI, as well as to other related contractors, Oberg Masonry and BMI.

23. Oberg Masonry is owned by Bob Oberg, Todd Berich's cousin. BMI is a masonry contractor in which Todd Berich owns a 60% share, such that it is part of the same controlled group as Integrity. *See Connors v. Calvert Dev. Co.*, 622 F. Supp. 877, 880-81 (D.D.C. 1985) (defining controlled group). BMI works for many of the same general contractors

as DBI. BMI has also used some of the same contractors as DBI and has hired former DBI employees.

24. In May 2006, a year after Dan and Todd Berich depleted DBI's capital and sold its equipment to Integrity for lease to non-signatory entities BMI and Oberg Masonry, DBI ceased making its Withdrawal Liability payments to the IPF. The IPF repeated its demand for the delinquent Withdrawal Liability payments. DBI also ceased making Withdrawal Liability payments to the Northwest Bricklayers Pension Plan.

25. DBI's failure to make payments to these employee benefit plans, as required by its Withdrawal Liability assessments, constituted a default under Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

26. Under Section 4301(b) of ERISA, 29 U.S.C. § 1451(b), DBI's default is treated in the same manner as a delinquency, within the meaning of Section 515 of ERISA, 29 U.S.C. § 1145.

### DBI Files for Bankruptcy and Leaves Two Employee Benefit Plans as Sole Creditors of a Zero Asset Estate

27. On September 1, 2006, DBI filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code.

28. Subsequently, the IPF retained bankruptcy counsel to file a proof of claim in the amount of $350,014.00 for the Withdrawal Liability owed. The IPF was one of only two creditors of DBI, the other creditor being the Northwest Bricklayers Pension Fund, with a potential claim of $94,490.20 for the balance of unpaid Withdrawal Liability owed by DBI.

Thus, after the depletion of DBI's assets by the Defendants, the only creditors of DBI were two ERISA funds owed Withdrawal Liability by DBI.

29. The IPF conducted a Rule 2004 bankruptcy examination and requested documentation reflecting the manner in which Dan and Todd Berich used the DBI line of credit funds. Counsel for Dan and Todd Berich refused to provide such documentation. DBI counsel informed the IPF that other relevant documents were destroyed or were very difficult to locate.

## VIOLATIONS CHARGED

## COUNT ONE

### EVASION OR AVOIDANCE OF WITHDRAWAL LIABILITY
(As to John Daniel Berich, Todd Berich, and Integrity)

30. The allegations contained in paragraph 1 through 29 are incorporated herein by reference, as though fully set forth.

31. Pursuant to Section 4212(c) of ERISA, 29 U.S.C. § 1392(c), "if a principal purpose of any transaction is to evade or avoid liability," then "liability shall be determined and collected without regard to such transaction." A transaction meets this definition if (1) the consummation of the transaction allows the evasion or avoidance of withdrawal liability, and (2) a principal purpose of the transaction is the evasion or avoidance of withdrawal liability. Pursuant to this provision, any assets that were the subject of the transaction may be recovered from the transferees, Defendants Dan and Todd Berich and Integrity, in this case.

32. The IPF also has the right to bring this action against Defendants Dan and Todd Berich and Integrity because it and the participants and beneficiaries of the IPF have been adversely affected and these Defendants have sought to evade or avoid Withdrawal Liability. *See* Sections 4212(c) and 4301(a)(1) of ERISA, 29 U.S.C. §§ 1392(c) and 1451(a)(1).

Defendants Dan and Todd Berich are personally liable to the IPF for the amounts transferred to each of them as part of this scheme to evade and avoid DBI's Withdrawal Liability. Defendant Integrity is also liable to the IPF for the assets transferred to it, or the value of those assets, as part of this scheme to evade and avoid DBI's Withdrawal Liability.

33. Defendants, upon information and belief, conspired and orchestrated a scheme whereby:

(a) DBI incurred Withdrawal Liability;

(b) Defendants Dan and Todd Berich were aware of DBI's Withdrawal Liability obligations in light of Plaintiffs' notice dated March 16, 2004, and DBI commenced payment of its Withdrawal Liability;

(c) Defendants Dan and Todd Berich, creating Integrity as a dummy company, carried out a scheme with a principal purpose being to evade or avoid DBI's Withdrawal Liability obligations to the IPF and the Northwest Bricklayers Pension Plan, in that:

(1) Dan and Todd Berich diverted DBI's capital via draws on DBI's line of credit for Defendants' personal use, relying on bogus promissory notes;

(2) Todd and Dan Berich sold over $400,000 of assets belonging to DBI to Todd Berich's company, Integrity, in order to pay off DBI's line of credit and make the transaction appear legitimate while not compensating DBI for its goodwill;

(3) Todd Berich's company, BMI, continued to operate without paying for the goodwill of DBI's business by leasing equipment Integrity purchased from DBI to related contractors, Oberg Masonry and BMI;

(4) DBI ceased making Withdrawal Liability payments to the IPF and the Northwest Bricklayers Pension Plan and soon after, filed for bankruptcy, leaving no assets for the two sole creditors, the IPF and the Northwest Bricklayers Pension Plan;

(5) This scheme was carried out so that DBI could avoid its Withdrawal Liability obligations; and

(d)   This transaction adversely affected the IPF and the Northwest Bricklayers Pension Plan in that they were, and are, unable to collect the Withdrawal Liability owed by DBI.

## COUNT TWO

### WITHDRAWAL LIABILITY (PIERCING THE CORPORATE VEIL)
### (As to John Daniel Berich and Todd Berich)

34.   The allegations contained in paragraph 1 through 29 are incorporated herein by reference as though fully set forth.

35.   Upon information and belief, the corporate veil of DBI should be pierced on the grounds, *inter alia*, that Defendants Dan and Todd Berich commingled corporate DBI and personal funds, diverted DBI corporate funds or assets to non-corporate uses, misused the DBI corporate entity for their own benefit, used the familial relationships among Dan (father), Todd (son), and Bob Oberg (cousin), to engage in less than arms-length transactions, and because inequity and evasion of a legal obligation would result in this instance if the corporate veil is not pierced.

36.   Under the doctrine of piercing the corporate veil, Defendants Dan and Todd Berich stood in the shoes of DBI and are not entitled to the protection of DBI's corporate veil. Accordingly, the veil should be pierced to impose personal liability on Dan and Todd Berich, as "employers" under ERISA, for the Withdrawal Liability obligations of DBI.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

### AS TO COUNT ONE – EVADE OR AVOID
### (John Daniel Berich, Todd Berich, and Integrity)

1.   For the transaction between Dan Berich and DBI to be disregarded, and Plaintiffs to be awarded recovery of $124,302.90 from Dan Berich, representing the disbursement made in February 2005 to Dan Berich from DBI's Key Bank operating account;

2.     For the transaction between Todd Berich and DBI to be disregarded, and Plaintiffs to be awarded recovery of $200,268.83 from Todd Berich, representing the disbursement made in February 2005 to Todd Berich from DBI's Key Bank operating account;

3.     For the transaction between Integrity and DBI to be disregarded, and Plaintiffs to be awarded recovery from Integrity of either the value of the equipment at the time of its transfer, or in the alternative, the equipment sold to Integrity by DBI in March and April 2005.

### AS TO COUNT TWO – WITHDRAWAL LIABILITY
### (John Daniel Berich and Todd Berich)

1.     For the balance of Withdrawal Liability owed by DBI, in the amounts of $350,014.00, representing the balance of the Withdrawal Liability due and owed the IPF, and $94,490.20, representing the balance of the Withdrawal Liability due and owed the Northwest Bricklayers Pension Fund, upon a default under Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5);

2.     For interest assessed on the unpaid Withdrawal Liability from the due date for payment under Sections 4301(b) and 502(g)(2)(B) of ERISA, 29 U.S.C. §§ 1451(b) and 1132(g)(2)(B);

3.     For an additional computation of interest or liquidated damages, whichever is larger, assessed on the overdue Withdrawal Liability under Sections 4301(b) and 502(g)(2)(C) of ERISA, 29 U.S.C. §§ 1451(b) and 1132(g)(2)(D);

4.     The amount incurred, and continuing to be incurred, by Plaintiffs for attorney's fees and costs of this action under Sections 4301(b) and 502(g)(2)(D) of ERISA, 29 U.S.C. §§ 1451(b) and 1132(g)(2)(D); and

5. Such other and further legal or equitable relief as this Court deems appropriate, including judgment for interest thereon that may accrue subsequent to the filing of this Complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: July 9, 2008

By: /s/ Ira R. Mitzner
Ira R. Mitzner, DC Bar No. 184564
Charles V. Mehler III, DC Bar No. 475909
Johnisha Matthews, DC Bar No. 492478
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403
(202) 420-2200
(202) 420-2201

*Attorneys for Plaintiffs*