## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN FLYNN, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | No. 1:08-CV-0588-PLF |
| | ) | |
| JOHN DANIEL BERICH, INDIVIDUALLY, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

### INTRODUCTION

This case involves a scheme orchestrated by Defendants John Daniel ("Dan") Berich and Todd ("Todd") Berich to siphon off over $300,000 from the sale of the assets of Dan Berich, Inc. ("DBI"), Dan Berich's company. Those DBI assets were "sold" to a dummy company controlled by Todd Berich, and transferred to Todd's company, Berich Masonry, Inc. ("BMI"). Although these machinations were carried out in an effort to lend an air of legitimacy to the Beriches' scheme, the end result was that DBI declared bankruptcy and the two employee benefit plans to which DBI owed hundreds of thousands of dollars of "withdrawal liability" under ERISA were left as the only creditors of a bankrupt estate with no assets.

Nonetheless, Defendants Dan and Todd Berich have filed a motion to dismiss the Amended Complaint, asserting lack of subject matter jurisdiction under Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), failure to state a claim under Rule 12(b)(6), and lack of venue. The lynchpin of each motion to dismiss argument is the assertion that the Amended Complaint fails to allege a colorable claim against Dan and Todd Berich individually under

either the "evade or avoid" or withdrawal liability provisions of ERISA.[1]  As shown below, however, the scheme devised by the Beriches is the very type of ruse from which Congress sought to protect employee benefit plans.   Accordingly, Section I of this Opposition demonstrates that the IPF states a valid claim against these individuals under both the "evade or avoid" provision of ERISA, as articulated and interpreted in a factually parallel decision of this Court, and under the withdrawal liability provisions, on piercing the corporate veil grounds. Section II demonstrates how these valid ERISA claims compel rejection of each of the Defendants' various other arguments for dismissal.   Section III establishes that Defendants' alternative motion to transfer venue must be denied because it is without merit and contrary to well-established Congressional policies designed to ensure the continued financial viability of employee benefit plans such as the IPF.[2]

The IPF's Amended Complaint is based on two theories:  (1) ERISA Section 4212(c), 29 U.S.C. § 1392(c), the "evade or avoid" provision of ERISA, and (2) liability of the individuals for the ERISA withdrawal liability owed by DBI under the theory of "piercing the corporate veil."  Both theories, as pled by the Plaintiffs, address and cure any alleged deficiencies (none of which had merit)  previously argued by Defendants in their challenge to the original Complaint. Nonetheless, Defendants' brief is essentially a "cut and paste" of its original motion to dismiss brief, and fails to take into account many of the new allegations made in the Amended Complaint. For this reason also, the present motion should be denied.

---

[1]  Although the IPF refers to "ERISA," the withdrawal liability provisions were enacted in the Multiemployer Pension Plan Amendment Act, passed by Congress in 1980 as a result of concern over the funding of these plans.  The recently-enacted Pension Protection Act of 2006 shows that funding is a continuing Congressional concern.

[2]  The Northwest Bricklayers Pension Plan has assigned its claim to the IPF.  See AC ¶ 4; Stupar Decl. ¶ 1.

DSMDB-2478002v01

## PROCEDURAL HISTORY

The IPF filed the original Complaint in this case on April 4, 2008. The Defendants, Dan and Todd Berich, responded by filing a motion to dismiss, arguing that the Complaint was deficient, *inter alia,* because it did not assert "piercing the corporate veil" liability against the Defendants, and therefore could not seek to impose the withdrawal liability of DBI upon them. According to their original motion, the proper relief, absent a "piercing" allegation, was to seek a judgment limited to the approximately $300,000 alleged to have been wrongfully taken from DBI by the Beriches.[3]

Although the IPF did not believe that Defendants' motion to dismiss had any merit since the Complaint was more than sufficient to state a valid claim under ERISA's "evade or avoid" provision, the IPF nonetheless exercised its right under Federal Rule of Civil Procedure 15(a)(1) to file an Amended Complaint. The Amended Complaint, which specifically addresses and renders moot the infirmities alleged by the Beriches, makes the following substantive changes: (1) Count I still alleges "evade or avoid" liability but now seeks relief only for the money and assets allegedly taken by the Defendants; and (2) Count II now seeks to hold Dan and Todd Berich personally liable for the balance of the withdrawal liability owed by DBI, on the theory of piercing the corporate veil.[4] Nonetheless, the present motion to dismiss proceeds as if the amendment had never been made. For example, Defendants argue that the complaint only "seeks to collect the remaining withdrawal liability from the individuals." *See* D.Mem. 5. Similarly, Defendants contends that "Plaintiffs' Complaint does not argue for corporate veil

---

[3] This argument was a distinction without a difference because there is approximately $350,000 still owed in withdrawal liability, while the IPF alleges that $324,571.73 was wrongfully taken from DBI by Dan and Todd Berich.

[4] The Amended Complaint also adds Integrity Equipment Company, Inc. ("Integrity") as an additional Defendant to the "evade or avoid" cause of action, but Integrity is not party to the present motion as it has not yet been served with the Amended Complaint.

DSMDB-2478002v01

piercing . . ." *Id.* 11. It thus appears that Defendants have simply done a "cut and paste," which wastes not only the time of the Plaintiffs, but also the resources of this Court.

## ARGUMENT

**I.    The IPF Has Stated Valid Claims And A "Plausible Entitlement To Relief" Under ERISA For Both Evading Or Avoiding Withdrawal Liability And Withdrawal Liability On Piercing The Corporate Veil Grounds**

Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim faces a heavy burden. This Court has held that such a motion, which tests the *legal* sufficiency of a complaint, should be denied unless the plaintiff is unable to allege a "plausible entitlement to relief." *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 529 F. Supp. 2d 80, 83 (D.D.C. 2008). In determining whether a "plausible entitlement to relief" has been shown, the Court must treat the Complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Id.* at 84. Moreover, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the plaintiff. *See, e.g., Doe v. United States Dep't of Justice*, 753 F.3d 1092, 1102 (D.C. Cir. 1985).

The D.C. Circuit has observed that this exacting standard is "rarely" met. *See, e.g., Doe*, 753 F.2d at 1101 (dismissals for failure to state a claim are "generally viewed with disfavor" by the federal courts and "rarely granted"). As emphasized by this Court, "the issue presented by a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *American Federation of Government Employees v. Hawley*, No. 07-00855, 2008 WL 835856, *6 (D.D.C. March 31, 2008) (Kennedy, J.) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006)), attached hereto as Exhibit A.

DSMDB-2478002v01

A.   **The IPF Has Stated A Valid "Evade Or Avoid" Claim Under Section 4212(c) Of ERISA And This Court's Decision In *Connors v. Marontha Coal Co.*, 670 F. Supp. 45 (D.D.C. 1987)**

1.   **This Court's Decision In *Marontha* Authorizes Funds To Bring "Evade Or Avoid" Claims Against Individuals, Irrespective Of Whether Those Individuals Are ERISA "Employers"**

Defendants misstate the nature of Count One of the Amended Complaint. Count One is not, despite Defendants' repeated suggestion,[5] a claim for withdrawal liability under Section 4201 of ERISA, 29 U.S.C. § 1381. Thus, it is immaterial for purposes of Count One that only "employers" are liable under Section 4201 for withdrawal liability. Instead, Count One asserts a cause of action against Defendants Dan and Todd Berich (as well as Integrity) for "Evasion or Avoidance of Withdrawal Liability," under an entirely separate provision of ERISA – Section 4212(c), 29 U.S.C. § 1392(c). This section provides ERISA funds such as the IPF with a means of redressing transactions that are designed to hinder the collection of withdrawal liability:

> If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction.

This Court has specifically held that Section 4212(c) enables funds to assert claims against parties, like Dan and Todd Berich, who benefited from transactions intended to "evade or avoid" withdrawal liability. In *Connors v. Marontha Coal Co.*, 670 F. Supp. 45, 46 (D.D.C. 1987), the plaintiff fund originally brought a withdrawal liability lawsuit against the defendant corporation and two individual defendants who were owners/officers of the corporation. After the individual defendants were dismissed because of a lack of piercing the corporate veil allegations, the fund moved to amend the complaint to assert a claim against the individual defendants for a transaction to "evade or avoid" withdrawal liability. *Id.* The court granted the

---

[5] *See, e.g.*, D.Mem. 5. Defendants' failure to understand the nature of Count One is demonstrated by their heading on page 5: "**The court lacks subject matter jurisdiction over Count One to determine whether withdrawal liability is owed and in what amount by an employer who is not a party to this action and to order the named defendants to pay the alleged withdrawal liability payments to plaintiffs.**" As explained above, Count One does not seek collection of withdrawal liability from anyone.

motion to amend, on the ground that individual defendants can be liable to the extent that they were alleged to have benefited from the transaction to evade or avoid withdrawal liability. *Id.* at 47. In so doing, this Court rejected the very argument advanced by the Defendants in the present case:

> Moore and Fields argue that since only an "employer" is liable for withdrawal liability, and since the definition of "employer" does not include individual owner/officers of a corporation in the absence of common law veil-piercing, 29 U.S.C. § 1392(c) cannot be read to allow a right of action against persons not otherwise falling with the definition of "employer" in 29 U.S.C. § 1002(5). We disagree. Section 1392 explicitly provides: "If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction."
>
> Whenever a transaction has removed assets from the formal structure of the corporation being assessed for withdrawal liability, liability can only be "collected" if there is a right of action against the transferee, whether or not it fits the definition of "employer."

*Id.* at 46-47. Thus, *Marontha* teaches that benefit funds may sue individuals under the "evade or avoid" provision of Section 4212 of ERISA, 29 U.S.C. § 1392(c), without having to show that the individuals are "employers" under ERISA or that facts exist to justify piercing the corporate veil of the company that owes withdrawal liability. Furthermore, by explicitly permitting the funds to seek recovery of the assets transferred to the individuals, this Court's decision in *Marontha* rejects the Beriches' contention (see D.Mem. 9) that the remedy in evade or avoid lawsuits is limited to returning the transferred assets *to the company's estate. See Marontha,* 670 F.Supp. at 47 ("Count IV can properly only seek recovery of assets actually transferred to Moore and Fields personally, with the intent to evade or avoid withdrawal liability").

###       2.       The Allegations In The Present Case Satisfy *Marontha* And Section 4212 Of ERISA

The IPF's allegations in the present case fall squarely within the principles announced in *Marontha.* The IPF's Complaint alleges that Defendants Dan and Todd Berich personally

DSMDB-2478002v01

benefited from a transaction intended to evade or avoid withdrawal liability as follows: (i) DBI was notified by the IPF that it was liable for withdrawal liability in the amount of $504,279; (ii) DBI thereafter began making periodic withdrawal liability payments to the IPF before ultimately ceasing all such payments and defaulting; (iii) at the time that DBI began making its withdrawal liability payments, Dan and Todd Berich devised an elaborate scheme to avoid DBI's withdrawal liability obligations; and (iv) this scheme included execution of promissory notes by Dan and Todd Berich (on behalf of DBI) to themselves, in the amount of $114,192.83 and $183,979.95 (not including interest), that were labeled as "loans" but were actually improper transfers of capital from DBI to DBI's owners, Dan and Todd Berich, for their personal use and benefit. *See* AC ¶¶ 18-19. Because the IPF and Northwest Bricklayers Pension Plan and their participants and beneficiaries were harmed by this scheme to "evade or avoid" withdrawal liability, the Plaintiffs ask this Court to disregard the transactions at issue and award the Plaintiffs a recovery, from the Beriches, of the monies transferred. *See* AC ¶¶ 31-33.

Under ERISA Section 4212(c) and this Court's decision in *Marontha*, these allegations, which must be accepted as true for purposes of Defendants' motion, are more than sufficient to state a valid ERISA claim, and thus "plausible entitlement to relief" against Dan and Todd Berich. Defendants' motion to dismiss Count One for failure to state a claim should be denied.

### 3. This Court Should Decline Defendants' Invitation To Reject *Marontha* In Favor Of A Contrary Decision From The District Of New Jersey

It is astounding that Defendants fail to even mention *Marontha*, which is not only directly on point, but the *only* decision in this District addressing this issue. Instead, Defendants rely upon decisions standing for the unremarkable and irrelevant proposition (discussed above) that individuals are ordinarily not liable as ERISA "employers" absent piercing the corporate veil allegations. Defendants cite only one case containing any analysis at all of a Section 4212(c)

7

"evade or avoid" claim – *IUE AFL-CIO Pension Fund v. Locke Machine Co.*, 726 F. Supp. 561, 570 (D. N.J. 1989). This decision from the District of New Jersey is both incorrect and directly contrary to this Court's decision in *Marontha*.

The court in *Locke* concluded that because ERISA limits withdrawal liability to "employers" and individual officers and shareholders are not "employers" absent facts sufficient to justify piercing the corporate veil, even those individuals who benefited from a transaction designed to evade or avoid withdrawal liability cannot be held personally liable for withdrawal liability. *See Locke*, 726 F. Supp. at 570 (citing ERISA Section 4201(a), 29 U.S.C. § 1391(a)). But as explained in *Marontha*, a Section 4212(c) "evade or avoid" action is *not* an action for recovery of withdrawal liability at all – it is an action that seeks to recover the amounts improperly transferred out of a company as part of a scheme to avoid withdrawal liability. *See Marontha Coal*, 670 F. Supp. at 47. As a result, a successful plaintiff in an "evade or avoid" lawsuit is able to recover from the beneficiary of the transaction only the amount that was actually transferred to that beneficiary.[6] Because the plaintiff is not seeking or recovering withdrawal liability under ERISA Section 4201, 29 U.S.C. § 1381, the "employer" limitation of that provision never comes into play.

There is no basis for appending Section 4201's requirement that claims for withdrawal liability be brought only against "employers" onto the IPF's "evade or avoid" claim under Section 4212(c). Indeed, under the *Locke* analysis, there would simply be no need for the "evade or avoid" provision of ERISA. This Court should not assume that Congress enacted a statute for no purpose. Instead, the Court should adhere to its decision in *Marontha*, decline Defendants' invitation to abandon this precedent in favor of a District of New Jersey decision that

---

[6] For example, if a company owing $1 million in withdrawal liability transfers $100,000 out of the company in an "evade or avoid" transaction, the plaintiff may recover only $100,000 from the beneficiary of the transaction.

DSMDB-2478002v01

misconstrues the nature of an ERISA "evade or avoid" claim, and conclude that the IPF's evade

or avoid claim in Count One states a "plausible entitlement to relief."

**B.      The IPF Also Has Stated A Valid Claim Against Dan And Todd Berich For Withdrawal Liability, On Piercing The Corporate Veil Grounds**

Separate and apart from the "evade or avoid" claim against the Beriches and Integrity, the

IPF has also asserted, in Count Two of the Amended Complaint, a valid cause of action against

Dan and Todd Berich for withdrawal liability, under Section 4201 of ERISA, on piercing the

corporate veil grounds.  Defendants concede (as they must) that individuals can be personally

liable for ERISA withdrawal liability if factors supporting "piercing the corporate veil" exist.

*See* D.Mem. 10 (citing *P&M Coal*, 801 F.2d at 1376-78).  Defendants contend, however, that the

allegations of the Amended Complaint are insufficient to state a piercing claim.  Defendants are

wrong, as the IPF's piercing allegations are more than sufficient, under the notice pleading

standards of the Federal Rules of Civil Procedure, to survive a Rule 12(b)(6) motion to dismiss

for failure to state a claim.

Defendants contend that because DBI is incorporated in Colorado, this Court must look

to Colorado's standards for piercing the corporate veil.[7]  *See* D.Mem. 11.  That is not the rule in

this Circuit, as the Court of Appeals has specifically held that the federal courts in the District of

Columbia should apply federal common law when a federal interest – such as ERISA – is

implicated by the decision of whether to pierce the corporate veil.  *See, e.g., United States v.

Pena*, 731 F.2d 8, 12 (D.C. Cir. 1984); *Flynn v. Thibodeaux Masonry, Inc.*, 311 F. Supp. 2d 30,

41 (D.D.C. 2004) (relying on *Pena* to apply, in an ERISA contribution action, the federal

---

[7] Contrary to Defendants' suggestion (*see* D.Mem. 11), even if state law governed the applicable piercing the corporate veil standards, this would not change the fact that Count Two is an ERISA claim, under Section 4201, 29 U.S.C. § 1451, for collection of withdrawal liability.  Piercing the corporate veil is merely the doctrine by which Dan and Todd Berich are individually responsible for that withdrawal liability.

DSMDB-2478002v01

common law standards for piercing the corporate veil, as interpreted by the District of Columbia federal courts).

Regardless, under both federal common law and Colorado state law, courts analyze a variety of similar factors in determining whether the corporate form should be disregarded. But Defendants' motion to dismiss addresses just one factor commonly (though not universally) cited by courts – piercing the corporate veil should be applied only when needed to "prevent fraud, illegality or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability from a crime" and, similarly, that "[t]he corporate form will not be disregarded unless a clear showing is made that it was used to perpetuate a fraud or defeat a rightful claim." *See* D.Mem. 11 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 n.2 (10th Cir. 1993); *see also Thobodeaux*, 311 F. Supp. 2d at 41 (explaining that part of the D.C. Circuit test for piercing the corporate veil asks whether "an inequitable result will follow" if the corporate form is not pierced). In the present case, the IPF has alleged just such a fraud, injustice, and inequitable result. The IPF's Amended Complaint is replete with detailed allegations outlining the scheme orchestrated by Dan and Todd Berich as a means of defrauding the Plaintiffs from ever collecting the substantial withdrawal liability owed to them, including:

- Dan and Todd Berich, fully aware of DBI's withdrawal liability to the IPF and Northwest Bricklayers Pension Plan, carried out a scheme with a principal purpose being to evade or avoid that withdrawal liability. (AC ¶ 33).

- In furtherance of their scheme, Defendants Dan and Todd Berich commingled corporate DBI and personal funds and diverted DBI corporate funds or assets to non-corporate uses. (AC ¶ 35).

- Defendants Dan and Todd Berich also misused the DBI corporate entity for their own benefit and used the familial relationships among various Berich family members to engage in less than arms-length transactions. (AC ¶ 35).

- Defendants siphoned off and diverted assets from DBI's line of credit, culminating in DBI's petitioning for bankruptcy in September 2006. (AC ¶¶ 17, 33).

DSMDB-2478002v01

- This diversion of assets began when Dan and Todd Berich executed (on behalf of DBI) "promissory notes" to themselves, in the amounts of $114,192.83 and $183,979.95, with Dan Berich executing Todd Berich's promissory note and Todd Berich executing Dan Berich's promissory note.  (AC ¶¶ 18, 33).

- These payments were not loans but were improper transfers of capital to DBI's owners, who authorized the payments to themselves.  (AC ¶ 18).

- In February 2005, as a result of the promissory notes issued to themselves, two disbursements were made from DBI's Key Bank operating account, in the amount of $124,302.90 and $200,268.83, representing the principal amounts of the promissory notes plus 11 percent interest.  As a result of these disbursements, DBI's line of credit grew four fold to $405,000.  (AC ¶ 19).

- Also in February 2005, Todd Berich then furthered the scheme by forming a dummy company called Integrity for the sole purpose of acting as a conduit of DBI's assets, in an effort to avoid DBI's withdrawal liability obligations.  (AC ¶¶ 20, 33).

- In March and April 2005, Defendants caused DBI and Todd Berich's company Integrity to engage in a transaction that was structured as a means for Integrity to purchase DBI's business, without compensating DBI for its goodwill, while making the transaction appear to be legitimate.  Although this transaction purportedly involved the purchase of DBI's equipment for $406,020, there is neither a contract nor a bill of sale reflecting this purchase.  (AC ¶¶ 21, 33).

- Dan and Todd Berich used the $406,020 from the sale of DBI's equipment to pay down DBI's line of credit (which had increased as a result of the promissory notes and subsequent payments Dan and Todd Berich).  (AC ¶¶ 22, 33).

- As an additional part of Defendants' scheme, Integrity "leased" the equipment it purportedly purchased from DBI back to DBI, as well as to other related non-signatory contractors – Oberg Masonry (owned by Todd Berich's cousin) and BMI (60% of which is owned by Todd Berich, and a company which has used some of the same contractors and same employees as DBI).  (AC ¶¶ 22, 23).

- DBI ceased making withdrawal liability payments to the IPF and Northwest Bricklayers Pension Plan and, soon thereafter, filed for bankruptcy.  As a result (indeed the intended consequence) of Defendants' machinations, no assets were left for the only two creditors of DBI – the IPF and the Northwest Bricklayers Pension Plan.  (AC ¶ 33).

- Because the IPF and Northwest Bricklayers Pension Plan and their participants and beneficiaries were adversely affected by Defendants' scheme (they were denied the withdrawal liability owed to them by this employer), inequity and evasion of a legal obligation will result if the corporate veil is not pierced.  (AC ¶ 35).

11

These allegations, which must be accepted as true at the motion to dismiss stage, demonstrate that Dan and Todd Berich used their control over DBI for the purpose of orchestrating an elaborate scheme whereby all the assets were diverted from DBI for the purpose of defeating the valid ERISA withdrawal liability claims of the IPF and Northwest Bricklayers Pension Plan and personally benefiting the Beriches.  In light of these detailed factual allegations, which are far more than labels or legal conclusions (*see* D.Mem. 13), it is hard to comprehend how Defendants can claim that the Plaintiffs have not pled that DBI was used by the Beriches to "perpetuate a fraud," "defeat a rightful claim," "defeat public policy," or that disregard of the corporate form is needed to "prevent fraud and injustice." *See supra* at 10-11. Plaintiffs' allegations are more than sufficient to establish the "plausible entitlement to relief" necessary to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See, e.g., Simpson v. Socialist People's Libyan Arab Jamahiriya*, 529 F. Supp. 2d 80, 83 (D.D.C. 2008). Accordingly, Defendants' Rule 12(b)(6) motion to dismiss Count Two should be denied.

**II.     Because The IPF Has Stated Valid Claims Under ERISA, Defendants' Other Bases For Dismissal Must Be Rejected**

**A.     Federal Question Jurisdiction Exists Because The IPF Has Alleged Valid "Evade Or Avoid" And "Withdrawal Liability" Claims Under ERISA**

Defendants' various motion to dismiss arguments are each based on the contention that the IPF has not stated any valid claims under ERISA.  Consequently, if this Court concludes that the IPF has sufficiently pled ERISA "evade or avoid" and/or withdrawal liability causes of action, it must deny Defendants' motion to dismiss on all grounds.  For instance, Defendants argue that this Court lacks subject matter jurisdiction over Count One because withdrawal liability actions may be maintained only against "employers" and individuals are not employers absent facts sufficient to justify piercing the corporate veil.  But, as explained exhaustively above, Count One is not one for withdrawal liability – it is an "evade or avoid" action under the

DSMDB-2478002v01

entirely separate provision of Section 4212(c). As this Court permits such actions against individuals irrespective of any showing that the individuals are employers (through piercing or otherwise), Defendants' arguments about who withdrawal liability claims can be asserted against are immaterial. Because Count One states a valid claim against Dan and Todd Berich under a federal statute – ERISA section 4212(c), 29 U.S.C. § 1392(c) – federal question jurisdiction exists.

Regarding Count Two, Defendants apparently contend that there is no subject matter jurisdiction over Plaintiffs' cause of action for withdrawal liability on piercing the corporate veil grounds because piercing requires an underlying ERISA cause of action and the "evade or avoid" cause of action alleged by the IPF is barred by the automatic stay of the bankruptcy court. *See* D.Mem. 9. But the IPF's piercing allegations do not relate to Count One's "evade or avoid" claim, they relate solely to Count Two's withdrawal liability claim. As Defendants' own brief concedes that individuals can be liable for withdrawal liability when piercing factors are present (*see* D.Mem. 10-11), Defendants' assertion that there is no underlying ERISA cause of action is frivolous.

**B.    Defendants' Bankruptcy Arguments Are Frivolous Because This Action Is Brought Against Dan And Todd Berich, Not The Bankrupt Debtor, DBI**

Having no real subject matter jurisdiction argument, Defendants instead attempt to misdirect the Court by asserting that IPF's claims are against DBI, and thus purportedly automatically "stayed" by DBI's bankruptcy filing. *See* D.Mem. 10-11. Defendants contend that the DBI bankruptcy filing somehow bars IPF's suit against the non-debtor Defendants Dan and Todd Berich. *Id.* 8-9. This argument is frivolous. The IPF's ERISA Section 4212(c) and 4201 claims are statutory claims made against the individual Berich Defendants – not DBI. The DBI bankruptcy filing does not, as a matter of law, bar or affect whatsoever the IPF's right to bring its ERISA evade or avoid and withdrawal liability claims against Dan and Todd Berich,

DSMDB-2478002v01

who are, after all, non-debtors unprotected by the bankruptcy stay. Indeed, it is well established that non-debtors who may be subject to litigation for transactions or events involving a debtor are not protected by a debtor's automatic stay. The automatic stay in 11 U.S.C. § 362(a) bars only further actions against the debtor or the debtor's property, not actions against non-debtors. *See generally* 11 U.S.C. § 362(a)(1)-(a)(6). It is hornbook bankruptcy law that actions against co-defendants, co-makers, guarantors, general partners of a partnership, or shareholders are not stayed.[8] Nor are actions to pierce the corporate veil to reach the principals of a corporation stayed, for such an action belongs to the creditors and not to the corporation. *See, e.g., In re M&L Bus. Mach. Co.*, 136 B.R. 271, 278 (Bankr. D. Colo. 1992), *aff'd*, 160 B.R. 850 (Bankr. D. Colo. 1993). Here, the IPF is suing Dan and Todd Berich personally as the result of their engaging in transactions that were done with a principal purpose of evading or avoiding DBI's withdrawal liability and by virtue of their personal liability, on piercing grounds, for withdrawal liability. The automatic stay of DBI's bankruptcy case affords them no protection.

It is true that DBI is liable for withdrawal liability it owes to the IPF. For this reason, the IPF has timely filed a Proof of Claim in the DBI bankruptcy case seeking to collect that liability.[9] However, DBI is *not* a party to the present lawsuit in this Court, and nothing in ERISA or the cases construing it require that DBI, as the relevant "employer," be a party to a suit seeking to hold third parties individually liable for their participation in transactions that trigger "evade or

---

[8] *See, e.g., Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. 1983) (co-defendant); *Patton v. Beardon*, 8 F.3d 346 (6th Cir. 1993) (general partner); *Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir. 1988) (guarantor); *Otoe County Nat'l Bank v. W&P Trucking, Inc.*, 754 F.2d 881 (10th Cir. 1985) (guarantor); *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Committee of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899 (9th Cir. 1997) (shareholders).

[9] Given that the Beriches have stripped the bankruptcy estate of all assets, it is not surprising that the Northwest Bricklayers Pension Plan chose not to file a Proof of Claim.

DSMDB-2478002v01

avoid" liability or individually liable for withdrawal liability on the basis of their own conduct justifying piercing the corporate veil.[10]

Most importantly, IPF's underlying withdrawal liability claim against DBI is not, contrary to Defendants' suggestion, "*property*" or an asset of the DBI bankruptcy estate – it is a "*liability*" of the DBI bankruptcy estate. Similarly, when DBI failed to make its withdrawal liability payments to IPF, and Dan and Todd Berich engaged in transactions having a principal purpose of causing DBI to "evade or avoid" its withdrawal liability, those actions established "*liability*" of these individuals to the IPF. There is no rational or legal basis to suggest that the IPF's ERISA "evade or avoid" claim against Dan and Todd Berich, which is a statutory claim designed solely to protect pension fund beneficiaries from improper diversions of employer assets, is somehow the "property" of the employer, DBI. Nor can the liability of these individual Defendants, on piercing grounds, be considered "property" of DBI.

The reality of this case is that Dan and Todd Berich looted DBI before orchestrating the DBI bankruptcy filing, using DBI funds to pay their personal loans in full and leaving only DBI's pension fund liabilities unpaid. As a result of their very actions, there is no real DBI bankruptcy estate – there are no assets left. In these circumstances, to suggest that efforts to hold Dan and Todd Berich independently liable under ERISA constitute an effort to "avoid the bankruptcy proceedings" or will "destroy the bankruptcy estate in [the] scramble for relief" is disingenuous. None of these bankruptcy-related arguments has any merit, let alone establishes a legal basis to dismiss the IPF's action.

---

[10] Contrary to Defendants' assertion (*see* D.Mem. 10), without any citation, the Plaintiffs have *never* acknowledged that this case involves the same claims as were asserted in the bankruptcy proceeding. This proceeding is against Dan and Todd Berich individually for evading and avoiding withdrawal liability, and for withdrawal liability on piercing the corporate veil grounds. The bankruptcy proceeding involves claims solely against DBI for collection of the withdrawal liability it owes.

DSMDB-2478002v01

**C.    This Court Has Personal Jurisdiction Over The Defendants, Pursuant To Section 4301(d) Of ERISA, Because The IPF Has Alleged Valid "Evade Or Avoid" And "Withdrawal Liability" Claims Under ERISA**

Section 4301(d) of ERISA, 29 U.S.C. § 1451(d), provides that "process may be served in any district where a defendant resides, does business, or may be found." As held by this Court in *Flynn v. Ohio Building Restoration, Inc.*, 260 F. Supp. 2d 156, 173 (D.D.C. 2003), a case involving the nearly identical language of ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), nationwide service of process provisions such as this authorize this Court to exercise personal jurisdiction over any properly-served ERISA defendant who has minimum contacts with the United States as a whole.

Defendants' only response is that Section 4301(d) is inapplicable because Plaintiffs have not alleged a colorable ERISA claim. *See* D.Mem. 9. This argument is without merit. As demonstrated above, Plaintiffs have stated valid claims under both the "evade or avoid" and withdrawal liability provisions of ERISA. Thus, inasmuch as Defendants Dan and Todd Berich indisputably have minimum contacts with the United States and have been properly served, this Court may exercise personal jurisdiction over them under Section 4301(d), 29 U.S.C. § 1451(d). Defendants' motion to dismiss for lack of personal jurisdiction should be denied.

**D.    Venue Is Conferred By Section 4301(d) Of ERISA Based On The IPF's Assertion Of Valid "Evade Or Avoid" And "Withdrawal Liability" Claims Under ERISA**

Defendants also move to dismiss the Amended Complaint for lack of venue under Section 4301(d) of ERISA, 29 U.S.C. § 1451(d). *See* D.Mem. 10. But this argument, like Defendants' other arguments, is based exclusively on the contention that "Plaintiffs' Complaint does not allege a colorable action under ERISA." *See* D.Mem. 10. Because the IPF has stated valid ERISA "evade or avoid" and withdrawal liability claims against Dan and Todd Berich, venue is proper in this Court because it is "the district where the plan is administered." ERISA

DSMDB-2478002v01

Section 4301(d), 29 U.S.C. § 1451(d).  Defendants' motion to dismiss for lack of venue is without merit.

### III.  There Is No Basis For Transferring Venue To The District Of Colorado, Particularly In Light Of Congress' Decision To Favor Benefit Funds' Choice Of Forum In ERISA Actions

As an "alternative" to their motion to dismiss, Defendants move for transfer of this action from this Court to the United States District Court for the District of Colorado.  In support of this argument, Defendants begin by citing the wrong venue provision – 29 U.S.C. § 1132, which addresses venue for delinquent contribution and other actions under Subchapter I of ERISA – rather than 29 U.S.C. § 1451(c), the provision addressing venue for "evade or avoid" and withdrawal liability claims under Subchapter III, Subtitle E of ERISA.  *See* D.Mem. 14. Regardless, the same analysis applies since both provisions authorize venue "where the plan is administered."

Defendants acknowledge that venue "could be proper" in this Court "if the Amended Complaint sufficiently alleges ERISA claims."  *See* D.Mem. 14.  Nonetheless, Defendants urge this Court to exercise its discretion to transfer this action to Colorado on the grounds that transfer "will prove more convenient and cost effective for all parties" because Dan and Todd Berich are Colorado residents, DBI is located in Colorado and was signatory to a collective bargaining agreement with a local Colorado union, the transactions complained of are alleged to have occurred in Colorado, and the witnesses and exhibits likely to be used in the case are supposedly located in Colorado.  *Id.* 14-15.

Defendants have not provided a sufficient basis for transferring this ERISA action across the country.  In interpreting 29 U.S.C. § 1451(d) and similar ERISA venue provisions (such as 29 U.S.C. § 1132), the federal courts have emphasized that an ERISA fund's choice of forum is entitled to special deference inasmuch as Congress intended to make the collection of employer

17

delinquencies efficient, economical, and inexpensive for ERISA funds. For instance, in a delinquent contribution case brought by the IPF in this Court, Judge Urbina denied the employer's motion to transfer venue, reasoning that respecting the Fund's choice of forum "makes collection efforts efficient, economical, and inexpensive for ERISA funds, fulfilling Congress's intent to protect the financial integrity of such funds." *Flynn v. Veazey Construction Corp.*, 310 F. Supp. 2d 186 (D.D.C. 2004).[11] Forcing employers to litigate claims where each employer resides, on the other hand, would "undermine the financial integrity of the funds, defeating the goal of efficient administration of ERISA plans." *Id*; *see also, e.g., Board of Trustees of the Hotel and Restaurant Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 804 (D.C. Cir. 1998) (explaining that "Congress had a strong goal of discouraging delinquencies and rendering delinquency collection less cumbersome and costly") (internal quotations omitted). This is particularly true of international funds such as the IPF.

The federal courts have made clear that Congress' intent to protect the financial integrity of ERISA funds is equally strong and important when an ERISA fund seeks to collect delinquent withdrawal liability from an employer. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 1994 U.S. Dist. LEXIS 9599, at *6 (N.D. Ill. July 12, 1994) (denying motion to transfer because "Congress aimed to reduce pension funds' litigation expenses") (attached hereto as Exhibit B); *Combs v. Adkins & Adkins Coal. Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984) (it makes "good sense" for cases to be litigated where plans are

---

[11] *See also* the following decisions in which this Court refused to grant employer motions to transfer ERISA actions brought by the IPF: *Flynn v. Thibodeaux Masonry, Inc.*, 2002 WL 31520354 (D.D.C. Oct. 28, 2002) (Urbina, J.); *Joyce v. R & R Ceramics, Inc.*, (Green, J.L. J); *Joyce v. Interstate Concrete* (Sullivan, J.); *Joyce v. Glenn's Tile* (Sullivan, J.); *Joyce v. Silveri Tile Company* (Green, J.L., J); *Joyce v. Eastern Concrete Paving Company*, 1996 WL 762323 (D.D.C. Sept. 5, 1996) (Friedman, J.); *Joyce v. Detroit Board of Education* (Harris, J.); *Joyce v. Berti Company Interiors,* (Harris, J.); *Joyce v. Knaphus Exterior Panel Co.*, (Hogan, J.); *Flynn v. Daly & Zilch Mason Contractors, Inc.* (Oberdorfer, J.); *Flynn v. Ravare Masonry, Inc.* (Friedman, J.); *Flynn v. Fischer Tile & Marble, Inc.* (Huvelle, J.), attached hereto as Exhibit C.

DSMDB-2478002v01

administered); *Kiely v. Shores Group, Inc.*, 1993 U.S. Dist. LEXIS 14496, at *14 (D. Kan. Sept. 29, 1993) (denying motion to transfer because of Congressional policies favoring a fund's choice of venue in ERISA actions) (attached hereto as Exhibit D). These same concerns are equally compelling when a fund brings an action, like the present case, to remedy a scheme designed to "evade or avoid" withdrawal liability.

Congress' policy goals and concerns regarding benefit funds are implicated in the instant case. David F. Stupar, the Executive Director of the IPF, has submitted a Declaration (attached hereto as Exhibit E) attesting to the extreme hardship that the IPF would suffer if forced to litigate in all the various states throughout the country where employers are located, rather than in the District of Columbia where the IPF is administered, where all IPF records are kept, where the IPF's sole office is maintained, where all IPF staff work, and where IPF counsel is located. *See* Stupar Decl. ¶¶ 5, 7. Mr. Stupar explained that because the IPF and its counsel are confronted with thousands of delinquent employers and dozens of litigated ERISA cases at any given time, the IPF's operations would come to a standstill if the IPF were forced to litigate in the various states where employers operate. *Id.* ¶ 8. It is for this reason, Mr. Stupar explained, that virtually all ERISA actions filed by IPF counsel are filed in this Court. *Id.* ¶ 10.[12]

Defendants have failed to set forth any valid reason for this Court to override these Congressional policies. While it is obvious that Defendants and their witnesses would prefer to litigate this case in Colorado, it is well-established that transfer is inappropriate where "the result of transfer would serve only to 'shift the balance of inconvenience.'" *Board of Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1258

---

[12] While there may be a few witnesses in Colorado called by the IPF, these witnesses are irrelevant as it has long been established that on a motion to transfer, a defendant may not complain about, and the court may not consider, inconvenience to a plaintiff's witness. *See, e.g., Sun Oil Co. v. Lederle*, 199 F.2d 423, 424 (6th Cir. 1952); *American Can Co. v. Crown Cork & Seal Co.*, 433 F. Supp. 333, 338 (E.D. Wis. 1977); *Holiday Rambler Corp. v. American Motors Corp.*, 254 F. Supp. 137, 139 (W.D. Mich. 1966); *Marks v. Fireman's Fund Ins. Co.*, 109 F. Supp. 800, 803 (S.D.N.Y. 1953).

DSMDB-2478002v01

(E.D. Va. 1988); *accord Flowers Industries, Inc. v. Bakery & Confectionary Union and Industry Int'l Pension Fund*, 565 F. Supp. 286, 293-94 (N.D. Ga. 1983) ("If the transfer would merely shift inconvenience from one party to another, the plaintiff's choice of forum should control"). This is particularly true when the case is brought by an ERISA fund:

> The majority of the trustees, their witnesses and their documentary evidence are located in this district. If these were the only factors to be weighed, the scale would be virtually balanced. However, the congressional intent in favor of the financial integrity of employee benefit plans tips the scale radically in favor of the trustees. If forced to litigate in [a distant forum], the pension funds would be burdened with significant additional expense and managerial hardship. This, in turn, could threaten the well being of the participants and their beneficiaries. The ERISA venue provision was intended to prevent this type of burden.[13]

For these reasons, as well as those stated above, Defendants' motion to transfer this case to the United States District Court for the District of Colorado should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, to transfer, should be denied in its entirety.

Dated: August 4, 2008

Respectfully submitted,

By: _____

Ira R. Mitzner, DC Bar No. 184564
Charles V. Mehler III, DC Bar No. 475909
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, D.C. 20006
(202) 420-2234

*Attorneys for Plaintiffs*

---

[13] *Trustees of Hotel Employees v. Amivest*, 733 F.Supp. 1180, 1183 (N.D. Ill. 1990).

DSMDB-2478002v01

**EXHIBIT A**

Westlaw.

543 F.Supp.2d 44                                                                                    Page 1

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

c
United States District Court,
District of Columbia.
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, et al., Plaintiffs,
v.
Kip HAWLEY, in his official capacity as
Administrator, et al., Defendants.
**Civil Action No. 07-00855 (HHK).**

March 31, 2008.

**Background:** Transportation security officers and unions brought action against Department of Homeland Security (DHS) and officials, alleging failure to establish appropriate safeguards to ensure security and confidentiality of personnel records. Defendants moved for dismissal.

**Holdings:** The District Court, Kennedy, J., held that:
(1) Aviation and Transportation Security Act (ATSA) did not provide private cause of action;
(2) unions lacked associational standing to bring action;
(3) officers had requisite standing;
(4) Privacy Act claim was ripe; and
(5) officers stated Privacy Act claim.
Motion granted in part and denied in part.

West Headnotes

**[1] Action** ☜3
13k3 Most Cited Cases

**[1] Aviation** ☜101
48Bk101 Most Cited Cases
Aviation and Transportation Security Act (ATSA) does not provide private cause of action. Aviation and Transportation Security Act, § 101(a), 49 U.S.C.A. § 114.

**[2] Action** ☜3

13k3 Most Cited Cases
Private rights of action to enforce federal law must be created by Congress.

**[3] Records** ☜31
326k31 Most Cited Cases
Unions representing transportation security officers who sued Department of Homeland Security (DHS) and officials, alleging failure to establish appropriate safeguards to ensure security and confidentiality of personnel records, lacked associational standing to bring claims under Privacy Act, since unions' individual members would have been required to participate in lawsuit to prove their individual damages. 5 U.S.C.A. § 552a.

**[4] Records** ☜31
326k31 Most Cited Cases
Transportation security officers who sued Department of Homeland Security (DHS) and officials, alleging failure to establish appropriate safeguards to ensure security and confidentiality of personnel records, possessed requisite standing to bring claims under Privacy Act, since officers' alleged injuries were not speculative or dependent on any future event. 5 U.S.C.A. § 552a(e)(10).

**[5] Records** ☜31
326k31 Most Cited Cases
Claims brought under Privacy Act by transportation security officers against Department of Homeland Security (DHS) and officials, alleging failure to establish appropriate safeguards to ensure security and confidentiality of personnel records, were ripe for adjudication, since claims alleged present injury rather than resting upon contingent future events. 5 U.S.C.A. § 552a(e)(10).

**[6] Records** ☜31
326k31 Most Cited Cases
Transportation security officers who sued Department of Homeland Security (DHS) and officials, stemming from purported failure to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                                                           Page 2

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

establish appropriate safeguards to ensure security and confidentiality of personnel records, alleged that agency acted intentionally or willfully and that officers were adversely affected thereby, as required to state claim under Privacy Act; complaint averred that agency was warned of deficiencies in their information security

but failed to establish proper safeguards. 5 U.S.C.A. § 552a(e)(10).

**\*45** Mark D. Roth, Charles Arthur Hobbie, American Federation Of Government Employees, Washington, DC, for Plaintiffs.

Jacqueline E. Coleman, U.S. Department of Justice, Washington, DC, for Defendants.

### MEMORANDUM OPINION

KENNEDY, District Judge.

**\*\*1** Plaintiffs, four transportation security officers employed by the Transportation Security Administration ("TSA") and the unions that represent them, bring this action against defendants TSA, Kip Hawley in his capacity as Administrator of the TSA, the Department of Homeland Security ("DHS"), and Michael Chertoff in his capacity as Secretary of the DHS. Plaintiffs allege that defendants violated the Aviation and Transportation Security Act ("ATSA"), 49 U.S.C. §§ 44901 and 44935, and the Privacy Act, 5 U.S.C. § 5 52a, by failing to establish appropriate safeguards to insure the security and confidentiality of personnel records.

Before the court is defendants' motion to dismiss [# 3]. Upon consideration of the motion, defendants' opposition thereto, and the record of this case, the court concludes that the defendants' motion should be granted in part and denied in part.

### I. BACKGROUND

On May 3, 2007, TSA discovered that a hard drive was "missing from a controlled area at the TSA Headquarters Office of Human Capital." Compl. ¶ 28-29. The hard drive contained personnel data for approximately 100,000 individuals employed by TSA between January 2002 and August 2005, including names, social security numbers, birth

dates, payroll information, financial allotments, and bank account and routing information. Compl. ¶¶ 28, 29, 31. On May 4, 2007, Administrator Kip Hawley issued a broadcast email to all TSA employees providing notice of the incident and stating that TSA would provide employees with free credit monitoring for one year free of charge. *Id.*; Defs.' **\*46** Mot. Dismiss, Exh. 1 (Decl. of Holmes), Att. 1 at 1 (5/4/2007 TSA Broadcast). [FN1]

> FN1. Although plaintiffs' complaint quotes only part of TSA's May 4, 2007, email to employees, Compl. ¶ 31, the court refers to the complete email, which defendants attached to their motion. Mot. Dismiss, Exh. 1 (Decl. of Holmes). Because the complaint quotes the email in part, the court may consider the email's full text. *See Baker v. Henderson*, 150 F.Supp.2d 13, 15 (D.D.C.2001) ("In determining whether a complaint fails to state a claim, the court may consider facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice.").

### II. ANALYSIS

On May 8, 2007, four TSA security officers ("individual plaintiffs") and their unions ("union plaintiffs") filed this class action complaint, [FN2] alleging that defendants violated ATSA and the Privacy Act by failing to ensure the security of the missing hard drive. In their motion to dismiss, defendants argue (1) ATSA does not provide a private right of action; (2) the union plaintiffs lack standing to bring their Privacy Act claim under both the act and the requirements of associational standing; (3) the individual plaintiffs lack standing because they do not allege a cognizable injury; (4) plaintiffs' Privacy Act claim is unripe; and (5) plaintiffs' allegations are insufficient to state a Privacy Act claim. To these arguments the court now turns.

> FN2. Plaintiffs bring this action on behalf of a purported class of "all persons who have been adversely affected by

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                                                              Page 3

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

Defendants' Privacy Act violations." Compl. ¶ 17.

# I. Plaintiffs' ATSA Claim

In response to the events of September 11, 2001, Congress enacted the Aviation and Transportation Security Act, Pub.L. No. 107-71, 115 Stat. 597 (2001), which created TSA and a federal workforce to screen passengers and cargo at commercial airports. 49 U.S.C. § 114. Among other things, ATSA requires the Administrator to "enforce security related regulations and requirements" and "oversee the implementation, and ensure the adequacy, of security measures at airports." §§ 114(f)(7), (11). Plaintiffs claim defendants violated ATSA by "fail[ing] to maintain personnel data from loss consistent with security-related regulations" and by "fail[ing] to ensure the adequacy of security measures at airports resulting in the loss of personnel data." Compl. ¶¶ 45- 46.

**\*\*2** [1] Defendants move to dismiss plaintiffs' ATSA claim, arguing that the statute does not provide a private cause of action, either express or implied. Plaintiffs admit that ATSA contains no express grant of a private cause of action, but contend that the court should find the act contains an implied cause of action because it "was enacted specifically to create a secure workforce of TSA screeners such as the Plaintiffs" and "protecting screeners' personnel data is vital to the protection of a secure workforce and security at the airports." Pls.' Opp'n to Defs.' Mot. Dismiss ("Opp'n") at 4. Plaintiffs further argue that "[t]here can be no doubt that the Plaintiffs ... are within the zone of interests created by the ATSA" because "the main purpose of the ATSA was to create this federal, security screening workforce." *Id.* The court agrees with defendants and finds that ATSA does not provide plaintiffs with a cause of action.

[2] "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)). "The judicial task is **\*47** to

interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* (citing *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)). The court's analysis "must begin with the language of the statute itself." *Touche Ross & Co. v. Redington,* 442 U.S. at 568, 99 S.Ct. 2479. Absent statutory language that expressly grants a private right of action, the court must determine whether the statute contains an implied right of action. *Anderson v. USAir, Inc.,* 818 F.2d 49, 54 (D.C.Cir.1987). Four factors are relevant to discerning congressional intent to provide a private remedy:

> (1) [W]hether the plaintiff is one of the class for whose benefit the statute was enacted;
> (2) whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy; (3) whether implying a private right of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, such that it would be inappropriate for the court to infer a cause of action based solely on federal law.

*Tax Analysts v. IRS,* 214 F.3d 179, 185-186 (D.C.Cir.2000) (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). Of the four factors, "the most important consideration is whether the legislature intended to create a private right of action." *Dial A Car, Inc. v. Transportation, Inc.,* 132 F.3d 743, 744 (D.C.Cir.1998).

As to the first factor, the court finds that Congress did not enact ATSA for the special benefit of TSA employees, [FN3] but rather for purposes of national security:

> FN3. Indeed, plaintiffs do not contend that they are of the class for whose benefit the statute was enacted. Instead they argue that because ATSA was enacted to create a secure workforce of airport security screeners and protecting the screeners' personnel data is vital to protecting the workforce and the airport, "implying a private right of action to enforce a security

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                                                          Page 4

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

regime is consistent with the underlying purposes of enacting the ATSA, specifically, to secure the traveling public by creating a federalized security workforce." Opp'n at 4. The Supreme Court has squarely rejected this type of argument for implying a private cause of action, holding that without statutory intent "to create not just a private right but a private remedy .... a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or *how compatible with the statute." Alexander,* 532 U.S. at 286-87, 121 S.Ct. 1511 (emphasis added).

Plaintiffs' alternative argument that plaintiffs are "within the zone of interests created by the ATSA," Opp'n at 4, is equally unavailing. The Supreme Court has explained that the "zone of interest" test is used principally to determine standing to bring APA claims and is not a universal test for standing. *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 401 n. 16, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). As demonstrated in *Cort v. Ash,* "the Court was requiring more from the would-be plaintiffs ... than a showing that their interests were arguably within the zone protected or regulated by [the statute at issue]." *Id.* (citing *Cort v. Ash,* 422 U.S. at 81, 95 S.Ct. 2080).

Recognizing that "the terrorist hijacking and crashes of passenger aircraft on September 11, 2001, which converted civil aircraft into guided bombs for strikes against the United States, required a fundamental change in the way [the government] approaches the task of ensuring the safety and security of the civil air transportation system," Congress enacted [ATSA] to improve security in the nation's transportation system. H.R. Conf. Rep. No. 107-296, at 53 (2001), *reprinted in* 2001 U.S.C.C.A.N. 589, 590. In order to achieve this goal, Congress created the Transportation Security **\*48** Administration within the Department of Transportation and charged it with assuring "security in all modes of

transportation." 49 U.S.C. § 114(d) (Supp. III 2003).

**\*\*3** *Coalition of Airline Pilots Ass'n v. FAA,* 370 F.3d 1184, 1186 (D.C.Cir.2004); *see also Springs v. Stone,* 362 F.Supp.2d 686, 694, 705 (E.D.Va.2005) ("ATSA is a legislative initiative aimed a strengthening the security of this Nation's transportation infrastructure--the civil air transportation system in particular--and nothing else.... ATSA was not promulgated in order to protect the employment interests of federal screeners, but instead to address national security and passenger safety.... Security was Congress's paramount concern."). [FN4]

> FN4. Presented with this same question about a statute that regulated the taxi industry, the D.C. Circuit found that the D.C. Council intended the regulation not only to foster a healthy taxi industry and to justly compensate taxi companies, but also to foster competition and create a centralized system of regulation for the general public's benefit. *Dial A Car, Inc.,* 132 F.3d at 745. In light of these "mixed motives," the D.C. Circuit could not conclude that the regulation was enacted to benefit the industry members rather than the general public. *Id.*

Turning to the second factor--whether some indication exists of legislative intent, explicit or implicit, either to create or to deny a private remedy--the court finds none. The text of § 114 creates the Transportation Security Administration and outlines the responsibilities of the Under Secretary of Transportation for Security. The specific sections plaintiffs allege defendants failed to implement are subparts of § 114(f), [FN5] which is titled "[a]dditional duties and powers" and provides that "[i]n addition to carrying out the functions specified in subsections (d) and (e), the Under Secretary shall ..." perform specific additional duties. 49 U.S.C. § 114(f). The Supreme Court has held that statutes like this, which focus on the person regulated rather than the individuals protected, create "no implication of an intent to confer rights on a particular class of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                                Page 5

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

persons." *Alexander,* 532 U.S. at 288-89, 121 S.Ct. 1511.

> FN5. In their complaint, plaintiffs quote from § 114(f)(7) and § 114(f)(11), Compl. ¶ 25, while their opposition states that "Plaintiffs challenge the Defendants' failure to implement ATSA, 49 USC § 114(f)(7) and § 114(f)(9)." The discrepancy is irrelevant to the court's analysis.

Additionally, § 114 contains no "rights-creating language," *Alexander,* 532 U.S. at 288, 121 S.Ct. 1511, or any other indication that any individual or any entity may file a suit to enforce its provisions. *See Anderson,* 818 F.2d at 54 (recognizing that "phrasing a statute in general terms rather than specifically identifying the benefited class indicates a lack of intent to create a private right of action.") (internal quotation omitted). The court finds no congressional intent to allow individuals to bring an action against the TSA for violating § 114 and concludes that no private right of action exists to enforce ATSA. [FN6] Accordingly, plaintiffs' ATSA claim will be dismissed. [FN7]

> FN6. In the absence of congressional intent to provide a private remedy under the first two factors, analysis under the final two factors is unnecessary. *Anderson,* 818 F.2d at 55 (citations omitted).

> FN7. Other district courts presented with the issue have also declined to find an implied private right of action in ATSA. *Ivyport Logistical Serv., Inc. v. Caribbean Airport Facilities, Inc.,* 502 F.Supp.2d 227, 230 (D.P.R.2007) (finding no private cause of action in ATSA that could be used as a basis for the lawsuit); *Nabozny v. NCS Pearson, Inc.,* 270 F.Supp.2d 1201, 1205 (D.Nev.2003) (holding that "in as much as ATSA does not afford Plaintiff individual rights, Plaintiff cannot state a claim for violation of the ATSA under Section 1983"); *see also American Fed'n of Gov't Employees TSA Local 1 v. Hawley,*

481 F.Supp.2d 72, 93 n. 10 (D.D.C.2006) (noting that "the prospect that Congress intended to create a private cause of action for a violation of ATSA § 110(c)(1) does not warrant a discussion.").

**\*49 II. Privacy Act Claim**

The Privacy Act of 1974, 5 U.S.C. § 552a, regulates the collection, maintenance, use, and dissemination of an individual's personal information by federal government agencies. *See* 5 U.S.C. § 552a. Plaintiffs claim that defendants violated § 552a(e)(10), which requires that

> Each agency that maintains a system of records shall ... establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained ...

§ 552a(e)(10). *S ee* Compl. ¶ 48; Opp'n at 17 (citing § 552a(e)(10)). Plaintiffs bring their claim under 5 U.S.C. § 552a(g)(1)(D), which provides that whenever an agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual ... the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction ...." § 552a(g)(1)(D).

**\*\*4** Defendants move to dismiss plaintiffs' claim on several grounds. First, they argue, the union plaintiffs lack standing to bring a claim under the Privacy Act and do not meet the requirements of associational standing, while the individual plaintiffs lack standing because their allegations of harm are speculative and dependent upon third parties' criminal actions. Mot. Dismiss at 11-15. Second, defendants argue the court should dismiss plaintiffs' Privacy Act claim as unripe. *Id.* at 16-18. Third, defendants contend plaintiffs have failed to state a claim. *Id.* at 18-24. To these arguments the court now turns.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                                    Page 6

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

**1. Standing**

**A. Union Plaintiffs lack standing to bring a Privacy Act claim.**

[3] Plaintiffs do not dispute that only individuals have standing to bring Privacy Act claims. [FN8] Opp'n at 13. Instead they *50 urge the court to find that the union plaintiffs have associational standing to bring their Privacy Act claim. Defendants argue that the union plaintiffs fail to meet the requirements of associational standing because the suit would require participation of its individual members. Defendants are correct.

> FN8. Indeed, any attempts to argue otherwise would fail, as the Privacy Act's text permits no other interpretation. The subsection entitled "Civil Remedies" provides that "[w]henever any agency" violates the act in ways specified in § 552a(g)(1)(A)-(D), *"the individual* may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection." § 552a(g)(1) (emphasis added). The act defines "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence." § 552a(a)(2); *see Committee in Solidarity with the People of El Salvador v. Sessions,* 738 F.Supp. 544, 547 (D.D.C.1990) ("[T]he Privacy Act does not confer standing upon organizations on their own or purporting to sue on behalf of their members."); *see also Dresser Indus., Inc. v. United States,* 596 F.2d 1231, 1237-38 (5th Cir.1979) (explaining that "[t]he Senate Report indicates that Congress, by using this definition [of individual], intended to distinguish 'between the rights which are given to the citizen as an individual under this Act and the rights of proprietorships, businesses and corporations which are not intended to be covered by this Act.' ") (citing S.Rep. No. 1183, 93d Cong., 2d Sess. 79, *reprinted in* 1974 U.S.C.C.A.N

6916, 6993); *Cell Assoc., Inc. v. Nat'l Inst. of Health,* 579 F.2d 1155, 1157 (9th Cir.1978) (remanding "with directions to dismiss Cell Associates, Inc., as a plaintiff for lack of standing under the Privacy Act" because "[i]t is clear that Cell Associates, a corporation formed in 1974, is not an 'individual' within the meaning of the statute"); *Socialist Workers Party v. Attorney Gen. of the United States,* 642 F.Supp. 1357, 1431 (S.D.N.Y.1986) (holding that political party plaintiff lacked standing because "[o]nly an individual, not an organization, has standing to obtain a remedy under the Act.").

To meet the requirements of associational standing, the union plaintiffs "must demonstrate that at least one member would have standing under Article III to sue in his or her own right, that the interests it seeks to protect are germane to its purposes, and that neither the claim asserted nor the relief requested requires that an individual member participate in the lawsuit." *Natural Res. Def. Council v. EPA,* 489 F.3d 1364, 1370 (D.C.Cir.2007) (citing *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 342-43, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C.Cir.2002)). Here, because the sole remedy for plaintiffs' Privacy Act claim is actual damages, [FN9] the union plaintiffs' individual members would be required to participate in the lawsuit to prove their individual damages. [FN10] *See Parks v. IRS,* 618 F.2d 677, 685 (10th Cir.1980) (holding that union plaintiff lacked standing to maintain a Privacy Act action in a representative capacity for damages suffered by its individual members because "[e]ach of the plaintiffs would have to testify because the actionable injury and the damages are individual ... not common to nor shared by all of the Union members.") (citing *Warth v. Seldin,* 422 U.S. 490, 515-16, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). As such, the union plaintiffs fail to meet one of the required elements of associational standing, and their claim must be dismissed.

> FN9. As discussed in section II.4,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

declaratory and injunctive relief are not available for plaintiffs' Privacy Act claim.

> FN10. Plaintiffs' concede that "the unique facts of individual members may have to be considered for a portion of the relief requested, such as financial loss...." Opp'n at 15.

**B. The Individual Plaintiffs have standing to bring their Privacy Act claim.**

[4] Defendants argue that the individual plaintiffs should be dismissed for lack of standing for failing to demonstrate an injury-in-fact. Mot. Dismiss at 13. [FN11] According to defendants, plaintiffs' concerns about future harm are speculative and dependent upon the criminal actions of third parties. Mot. Dismiss at 13-15. The court disagrees.

> FN11. "To have Article III standing, a plaintiff must demonstrate an 'actual or immediate' 'injury-in-fact' that is 'fairly traceable' to the challenged conduct and 'likely' to be 'redressed by a favorable decision.' " *Tozzi v. U.S. Dep't of Health and Human Servs.,* 271 F.3d 301, 307 (D.C.Cir.2002) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Defendants challenge only plaintiffs' ability to meet the injury-in-fact requirement, not causation or redressibility. Mot. Dismiss at 13-15.

**5** Plaintiffs allege that because TSA violated § 552a(e)(10) by failing to establish safeguards to secure the missing hard drive, they have suffered an injury in the form of "embarrassment, inconvenience, mental distress, concern for identity theft, concern for damage to credit report, concern for damage to financial suitability requirements in employment, and future substantial financial harm, [and] mental distress due to the possibility of security *51 breach at airports." Compl. ¶¶ 41-42. As such, plaintiffs' alleged injury is not speculative nor dependent on any future event, such as a third party's misuse of the data. [FN12] The

court finds that plaintiffs have standing to bring their Privacy Act claim.

> FN12. Although defendants argue that plaintiffs "have not alleged any injuries as a result of Defendants' actions that are real and immediate," in this circuit, "emotional trauma alone is sufficient to qualify as an 'adverse effect' under Section 552a(g)(1)(D) of the [Privacy] Act." *Krieger v. Dep't of Justice,* 529 F.Supp.2d 29, 53 (D.D.C.2008) (quoting *Albright v. United States,* 732 F.2d 181, 186 (D.C.Cir.1984)).

**2. Plaintiffs' Privacy Act claim is ripe.**

[5] Defendants contend that plaintiffs' claim is not ripe for adjudication because neither plaintiffs nor defendants can account for the hard drive's location and there is no evidence of unauthorized use of plaintiffs' information. Defendants' ripeness argument suffers from the same infirmity as its standing argument: future unauthorized use is not the basis of plaintiffs' claim. Plaintiffs are asking the court to determine whether defendants violated § 552a(e)(10) by failing to establish appropriate safeguards to insure the security of the hard drive, which, plaintiffs allege, resulted in the hard drive's loss and plaintiffs' injury.

"To determine whether a controversy is ripe, we must consider both the 'fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " *Exxon Mobil Corp. v. Federal Energy Regulatory Comm'n,* 501 F.3d 204, 208 (D.C.Cir.2007) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Plaintiffs' claim is fit for judicial decision at this time. It does not, as defendants contend, "rest[ ] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Worth v. Jackson,* 451 F.3d 854, 861 (D.C.Cir.2006) (quoting *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)). As for the hardship prong, the D.C. Circuit has ruled that where "there are no institutional interests favoring postponement of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                                    Page 8

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

review, [plaintiff] need not satisfy the hardship prong." *AT & T Corp. v. FCC,* 349 F.3d 692, 700 (D.C.Cir.2003). Accordingly, the court finds plaintiffs' claim ripe for adjudication.

**3. Plaintiffs have stated a Privacy Act claim.**

[6] Defendants argue plaintiffs have failed to state a claim by failing to allege facts from which this court could infer (a) defendants acted intentionally or willfully; (b) plaintiffs were adversely affected; and (c) plaintiffs sustained actual damages. *Id.* at 18-24. The court considers each of these alleged deficiencies.

**A. Intentional and Willful**

"An agency acts in an intentional or willful manner 'either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.' " *Deters v. United States Parole Comm'n,* 85 F.3d 655, 660 (D.C.Cir.1996) (quoting *Albright v. United States,* 732 F.2d 181, 189 (D.C.Cir.1984)). To rise to this level, " '[t]he violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.' " *Id.* (quoting *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987)).

**6 Defendants contend that the factual allegations in plaintiffs' complaint provide no basis for an inference of intentional or willful conduct. Plaintiffs' complaint acknowledges that TSA notified employees *52 of the incident "out of an abundance of caution," apologized that employees' information may be subject to unauthorized access, and stated that they "deeply regret" the incident. These facts, defendants argue, provide no basis of an intentional or willful violation. Plaintiffs further allege that "[d]efendants have been repeatedly informed of recurring, systemic, and fundamental deficiencies in its information security," citing an Office of Inspector General, Department of Homeland Security report titled "Improved Security Required for Transportation Security Administration Networks." Compl ¶ 35. Defendants claim this allegation is not credible

because the report notes that while TSA could further improve its network security, it had already strengthened the security of its servers and workstations, and OIG had detected significantly fewer security vulnerabilities. *Id.* at 20-21. Finally, plaintiffs allege that "[d]efendants demonstrated reckless disregard for privacy rights when it failed to effectively secure the external hard drive that maintained the personal information of its personnel workforce." Compl. ¶ 36.

To survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (citations omitted). Plaintiffs' allegations, if proven, would support a finding that defendants were warned of the deficiencies in their information security but failed to establish proper safeguards. *See In re Dep't of Veterans Affairs Data Theft Litig.,* Misc. No. 06-5606, Dkt. # 30 at 11 (D.D.C. Nov. 11, 2007) (Robertson, J.) (holding that plaintiffs' allegations were sufficient because, if proven, they would support a finding that VA's conduct was "intentional and willful"). At this point, the Court may not conclude that plaintiff cannot establish "any set of facts consistent with the allegations in the complaint" regarding this statutory violation. *Bell Atlantic Corp.,* 127 S.Ct. at 1969 (citations omitted). Indeed, "the issue presented by a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Rochon v. Gonzales,* 438 F.3d 1211, 1216 (D.C.Cir.2006) (citation omitted). The court finds that the plaintiffs have adequately alleged that defendants' conduct was "intentional and willful."

**B. Adverse Effect**

Defendants claim plaintiffs fail to allege sufficient facts to allow the court to infer plaintiffs have suffered an adverse affect. Plaintiffs allege they "experienced adverse effects due to Defendants' failure to safeguard the Personnel Data and/or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                                       Page 9

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

disclosure, including but not limited to, embarrassment, inconvenience, mental distress, concern for identity theft, concern for damage to credit report, concern for damage to financial suitability requirements in employment, and future substantial financial harm." Compl. ¶ 41. In addition, plaintiffs "who are members of the traveling public experienced adverse effects due to Defendants' disclosure, including but not limited to, mental distress due to the possibility of security breach at airports." Compl. ¶ 42. As a result, plaintiffs claim they "must take affirmative steps to recover peace of mind, emotional stability, and personal security, including but not limited to, frequently obtaining and reviewing credit reports, bank statements, and other similar information." Compl. ¶ 43.

**\*\*7** Defendants fault plaintiffs for not "describ[ing] a single occasion on which they **\*53** were embarrassed and inconvenienced or identified the nature and occasion of any affirmative step taken to recover peace of mind," arguing that plaintiffs cannot rely on such "conclusory assertions" or "sweeping averments" unsupported by factual allegations. Mot. Dismiss at 21-22. The court disagrees with defendants. "At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice,' and the court 'presum[es] that general allegations embrace the specific facts that are necessary to support the claim.' " *Sierra Club,* 292 F.3d at 898-99 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Plaintiffs have adequately plead "adverse effect."

**C. Actual Damages**

Finally, defendants assert that plaintiffs have failed to state a claim because they have not sufficiently plead actual damages. In *Doe v. Chao,* 540 U.S. 614, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004), the Supreme Court held that a plaintiff must prove actual damages to recover under 552a(g)(4) of the Privacy Act. 540 U.S. at 624-25, 124 S.Ct. 1204 (explaining that "an individual subjected to an adverse effect has injury enough to open the courthouse door, but without more has no cause of

action for damages under the Privacy Act"). The Court, however, left open the question of what constitutes "actual damages," noting that the courts of appeals "are divided as to whether actual damages are limited to pecuniary loss or can be awarded for emotional damages without any out-of-pocket loss." *Id.* at 627 n. 12, 124 S.Ct. 1204. The definition of "actual damages" is also unresolved in this Circuit. *See Albright,* 732 F.2d at 186 (declining to consider "whether non-economic injuries or damages other than out-of-pocket expenses could qualify as 'actual damages' under Section 552a(g)(4))."

Defendants argue that the court should interpret "actual damages" narrowly, as is required in construing a waiver of sovereign immunity, to mean only out of pocket expenses, not emotional damages. Plaintiffs claim is therefore insufficient, defendants contend, as "[e]ven the most favorable reading of Plaintiffs' Complaint makes plain that they are not seeking recovery for any alleged out-of-pocket expenses." Mot. Dismiss 23-24. Indeed, plaintiffs concede that they "have not pled current, actual, financial loss." Opp'n at 12. Nevertheless, the court finds that plaintiffs have adequately alleged actual damages at this stage. *See Montemayor v. Federal Bureau of Prisons,* 2005 WL 3274508, at \*5 (D.D.C. Aug.25, 2005) (citing cases) (rejecting argument to narrowly interpret "actual damages" to mean only pecuniary losses and following instead "the recent trend at the District Court level ... to allow Privacy Act suits seeking general compensatory damages, such as pain and suffering and non-pecuniary losses, to proceed" past the motion to dismiss stage.).

**4. Injunctive and Declaratory Relief are not Remedies for Plaintiffs' claim.**

**\*\*8** In addition to actual damages, plaintiffs' prayer for relief seeks ten other remedies, including six types of injunctive relief (Compl. Demand ¶¶ 5-9, 12), three types of declaratory judgment (Compl. Demand ¶¶ 2-4), and a demand for *in camera* review of defendants' security procedures (Compl. Demand ¶ 1). [FN13] Defendants correctly **\*54** assert that these declaratory and injunctive remedies

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                                                                    Page 10

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

are not available to plaintiffs.

> FN13. Although plaintiffs acknowledge that " 'actual damages' must be proven in order for a court to award monetary relief," Opp'n at 12, Plaintiffs' opposition appears to indicate that they seek only equitable and declaratory relief, and it is unclear to the court whether they intend to prove their claim for actual damages. *See id.* at 1-2 ("The malfeasance lies in the release of the information itself and not on what financial damage is wrought by the release."); *id.* at 12 ("while the Plaintiffs have not pled current, actual financial loss, this does not foreclose standing as equitable relief remains available."); *id.* ("The Plaintiffs seek equitable relief as meaningful redress from the injury caused them."); *id.* at *16* ("Defendants' err in their failure to recognize that the Defendants' earlier failure to secure the hard-drive so that such a loss of personnel data could occur is the harm and injury already sustained. Plaintiffs are not waiting for additional harm and injury albeit cognizant that future, additional harm may occur from the loss of personnel data."); *id.* at 17 ("Delaying litigation on this issue, therefore, will impede the declarative, equitable, and injunctive remedies sought by the Plaintiffs."); *id.* at 19 ("while 'actual damages' must be proven in order for a court to award monetary relief, the Supreme Court left open the question of whether equitable relief is available without a showing of actual monetary damages.").

The Privacy Act's civil remedies provision authorizes two specific forms of injunctive relief: (1) for § 552a(g)(1)(A) claims, "the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct;" § 552a(g)(2)(A), and (2) for § 552a(g)(1)(B) claims, "the court may enjoin the agency from withholding the records and order the production to the complainant of any agency

records improperly withheld from him," § 552a(g)(3)(A). Plaintiffs do not bring their claim under either of these sections, but rather under § 552a(g)(1)(D). [FN14] As the D.C. Circuit has held "only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs." *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1122 (D.C.Cir.2007) (citing *Doe v. Stephens,* 851 F.2d 1457, 1463 (D.C.Cir.1988)). [FN15] The court therefore dismisses Plaintiffs' demands for injunctive and declaratory relief. [FN16]

> FN14. Section 552a(g)(4) governs relief for claims under (g)(1)(D):
> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of--
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
> (B) the costs of the action together with reasonable attorney fees as determined by the court.
> 5 U.S.C. § 552a(g)(4).

> FN15. *See Doe v. Chao,* 540 U.S. at 635, 124 S.Ct. 1204 (Ginsburg, J., dissenting) ("It bears emphasis that the Privacy Act does not authorize injunctive relief when suit is maintained under § 552a(g)(1)(C) or (D). Injunctive relief, and attendant counsel fees and costs, are available under the Act in two categories of cases: suits to amend a record, § 552a(g)(2), and suits for access to a record, § 552a(g)(3). But for cases like Doe's, brought under § 552a(g)(1)(C) or (D), ... only monetary relief is available.").

> FN16. Plaintiffs contend that in *Doe v. Chao,* the Supreme Court "left open the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

543 F.Supp.2d 44                                                                    Page 11

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

**(Cite as: 543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.))**

question of whether equitable relief is available" by stating that "[t]he Privacy Act says nothing about standards of proof governing equitable relief that may be open to victims of adverse determinations or effects...." Opp'n at 12, 19 (quoting *Doe v. Chao,* 540 U.S. at 619, n. 1, 124 S.Ct. 1204). Plaintiffs fail to note, however, that the Court went on to explain that "it may be that this inattention is explained by the general provisions for equitable relief within the Administrative Procedure Act ..." 540 U.S. at 619, n. 1, 124 S.Ct. 1204. As the court already stated, plaintiffs have not brought any claims under the Administrative Procedure Act.

**\*55 III. CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. An appropriate order accompanies this memorandum opinion.

543 F.Supp.2d 44, 2008 WL 835856 (D.D.C.), 27 IER Cases 1240

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT B**

LEXSEE 1994 US DIST LEXIS 9599



Caution
As of: Aug 04, 2008

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and HOWARD McDOUGALL, et al., on the present trustees, Plaintiffs, v. CENTRAL TRANSPORT, INC., a corporation and CENTRAL CARTAGE, INC., a corporation, Defendants.**

**No. 94 C 811**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1994 U.S. Dist. LEXIS 9599*

**July 12, 1994, Decided
July 14, 1994, Docketed**

**JUDGES:** [*1] Conlon

**OPINION BY:** SUZANNE B. CONLON

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Central States, Southeast and Southwest Areas Pension Fund, a pension trust, and Howard McDougall, a trustee of the pension trust (collectively "the pension fund") sue Central Transport, Inc. and Central Cartage, Inc. (collectively "the defendants"). The pension fund seeks to pierce the defendants' corporate veils to enforce an unsatisfied withdrawal liability judgment under the Employee Retirement Income Security Act, *29 U.S.C. § 1001, et seq.* ("ERISA"). The defendants move for a change of venue.

*BACKGROUND*

The background facts are fully set out in the court's May 6, 1994 memorandum opinion. *See* Memorandum Opinion and Order, No. 94 C 811 (N.D. Ill. May 6, 1994). In summary, the pension fund has obtained ERISA withdrawal liability judgments of nearly $ 1 million against two trucking companies, but has been unable to collect on the judgments. The pension fund filed this suit to enforce the unsatisfied judgments. The pension fund alleges that the defendants are *alter egos* of the trucking companies who have failed to satisfy the judgments against them. The defendants' [*2] motion to dismiss was denied. *See* Memorandum Opinion and Order, No. 94 C 811 (N.D. Ill. May 6, 1994). The defendants now move to transfer venue. *See 28 U.S.C. § 1404(a).*

*DISCUSSION*

The defendants seek to transfer venue to the Eastern District of Michigan. The defendants argue that ERISA's venue provision is inapplicable because this is not an ERISA case, but "rather an action to enforce a judgment against a corporate *alter ego.*" Motion at 2 n.1 (citing Memorandum Opinion and Order, No. 94 C 811 (N.D. Ill. May 6, 1994) at 5-6). The defendants' argument regarding the inapplicability of ERISA's venue provision is convincing. Nevertheless, the defendants concede that venue is appropriate in this district; they acknowledge that venue is proper under *28 U.S.C. § 1391(a)* because the pension fund is administered in this district. Thus, the defendants request that the case be transferred pursuant to *28 U.S.C. § 1404(a)*, the federal change of venue statute.

**1. Standards**

Under the change of venue statute, the court may transfer any suit to another district "for [*3] the convenience of parties and witnesses, in the interest of justice." *28 U.S.C. § 1404(a).* Venue may be changed under *section 1404(a)* if: (1) venue is proper in the transferor dis-

1994 U.S. Dist. LEXIS 9599, *

trict; (2) venue is proper in the transferee district; and (3) a change of venue would serve the convenience of the parties and witnesses and is in the interest of justice. *See Hughes v. Cargill, Inc.,* No. 94 C 1072, 1994 WL 142994 (N.D. Ill. Apr. 12, 1994) at *2. The decision whether to transfer venue for reasons of convenience is solely within the discretion of the court. *See Karrels v. Adolph Coors Co., 699 F. Supp. 172, 174 (N.D. Ill. 1988).*

In deciding whether to transfer venue, the plaintiff's choice of forum generally is given some deference. *See, e.g., Espino v. Top Draw Freight System, Inc., 713 F. Supp. 1243, 1244 (N.D. Ill. 1989).* However, the plaintiff's choice of forum is not absolute; the chosen forum must bear some reasonable relationship to the events that form the basis of the action. *Id.* When the chosen forum lacks *any* significant connection with the case, the plaintiff's choice [*4] becomes merely one of many factors that the court may consider. *See Pansophic Systems, Inc. v. Graphic Computer Service, Inc., 736 F. Supp. 878, 880 (N.D. Ill. 1990).*

In determining whether to transfer venue, the court seeks to promote the efficient administration of justice and does not consider the private interests of the parties. *See Robinson v. Town of Madison, 752 F. Supp. 842, 847 (N.D. Ill. 1990).* Venue may not be transferred simply to shift inconvenience from the defendant to the plaintiff. *See Store Decor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd., 767 F. Supp. 181, 185 (N.D. Ill. 1991).* Interests of justice that may warrant change of venue include: availability of documents; cost of the witnesses' court attendance; and relative congestion of court dockets and prospects for an earlier trial. *See Zalutsky, Pinski & DiGiacomo, Ltd. v. Kleinman, 747 F. Supp. 457, 462-63 (N.D. Ill. 1990).* [1] Venue may be transferred only if there is a clear balance of inconvenience in the transferor district over the transferee district. *See Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd., 776 F. Supp. 1271, 1276 (N.D. Ill. 1991).* [*5]

> 1   Other factors, including the location at which events at issue occurred and the relation of the community to the site of the occurrence at issue are inapplicable in this case.

## 2. The Defendants' Motion

### a. Convenience

The defendants seek a change in venue on the grounds of *forum non conveniens:* They contend that it is highly inconvenient for them to litigate the case in this district. The defendants note that all their witnesses reside in Michigan and that all their documents are located in Detroit. However, the defendants fail to note that the

pension fund's witnesses live and work in the Chicago area. In addition, it is not clear whether any of the defendants' witnesses will be required to testify at trial. Finally, the location of the documents is not relevant because the pension fund must bear any travel and reproduction costs. Convenience is not a significant factor necessitating a change in venue.

### b. Deference

The defendants contend that the court must not defer to the pension fund's choice [*6] of venue. The defendants argue that the only connection between the action and this district -- that the pension fund is administered in Chicago -- is insignificant. The court does not defer to the pension fund's choice of forum. As the defendants note, the Northern District of Illinois has no connection to the case other than the pension fund's presence. *See Hughes v. Cargill, Inc.,* No. 94 C 1072, 1994 WL 142994 (N.D. Ill. Apr. 12, 1994) at *3 n.3 (to warrant deference, plaintiff's choice of forum must have "significant connection to the case").

Nevertheless, a pension fund may bring an ERISA action in any district "where the plan is administered." *29 U.S.C. § 1132(e)(2).* In enacting ERISA, Congress aimed to reduce pension funds' litigation expenses. *See, e.g., Central States, S.E. & S.W. Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1152-53 (7th Cir. 1989).* This is an action by a pension fund to collect unsatisfied ERISA judgments. Thus, in light of Congress' purpose that pension funds' litigation expenses be minimized, the court affords some weight to the pension fund's decision to file in this [*7] district.

### c. Waste

The most significant factor in this case is the efficient administration of justice. Changing venue at this stage of the litigation would clearly waste judicial resources. The suit was filed over five months ago, on February 8, 1994. The court has already ruled on one substantive motion: The defendants' motion to dismiss was denied on May 6, 1994 -- over a month before the defendants moved to transfer venue. [2] The court has closely managed the pretrial process: The court directed the parties to complete discovery by July 29, 1994, and it also ruled on three motions to compel discovery. In addition, pursuant to *Fed. R. Civ. P. 37(b),* the court precluded the defendants from relying upon evidence that they failed to produce despite orders to compel. *See Order,* No. 94 C 811 (N.D. Ill. July 7, 1994). [3] In light of this case, it would be a waste of judicial resources to now change venue. The interests of justice require that venue be maintained in this district.

> 2   In denying the motion, the court ruled that the pension fund stated a claim for piercing the cor-

1994 U.S. Dist. LEXIS 9599, *

porate veil and also determined that ERISA's statute of limitations does not apply to the action. *See* Memorandum Opinion and Order, No, 94 C 811 (N.D. Ill. May 6, 1994) at 5-6.

[*8]

3    In accordance with *Fed. R. Civ. P. 37(a)(4)*, the court directed the defendants to pay the attorneys' fees the pension fund expended in moving to compel. *Id.*

**CONCLUSION**

For the foregoing reasons, the motion to transfer venue is denied.

ENTER:

Suzanne B. Conlon

United States District Judge

July 12, 1994

**EXHIBIT C**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHN FLYNN *et al.*,

                    Plaintiffs,                    Civil Action No.:    02-0710 (RMU)

            v.

THIBODEAUX MASONRY, INC. *et al.*,       Document Nos.:       6, 7

                    Defendants.                                           **FILED**

                                                                      OCT 2 8 2002

                                                                Clerk, U.S. District Court
                                                                    District of Columbia

**<u>MEMORANDUM ORDER</u>**

**DENYING THE DEFENDANTS' MOTION TO TRANSFER VENUE**

**I. INTRODUCTION**

This matter is before the court on the *pro se* defendants' motion to transfer this

action to the U.S. District Court for the Middle District of Louisiana pursuant to 28

U.S.C. § 1404. Defs.' Mot. to Transfer at 1-2. The plaintiffs filed this action pursuant to

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to

collect pensions from the defendants. The defendants, Thibodeaux Masonry, Inc.,

Thibodeaux Masonry, and Thomas Thibodeaux (collectively, "Thibodeaux" or "the

defendants"), are employers located in Louisiana. Compl. ¶ 1, 5-9. The plaintiffs are the

trustees of Bricklayers & Trowel Trades International Pension Fund ("the Fund"), a

multi-employer employee benefit plan administered in the District of Columbia. *Id.* ¶ 3.

The plaintiffs oppose the defendants' motion to transfer venue, asserting that the court

should give deference to the Fund's choice of venue under the ERISA collection statute,

29 U.S.C. § 1132(e)(2). Pls.' Opp'n at 2. For the reasons that follow, the court denies

the defendants' motion to transfer venue.

1

## II. ANALYSIS

### A. Legal Standard for a Motion to Transfer Venue in an ERISA Case

A district court may transfer venue "[f]or the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). A strong presumption exists, however, in favor of the plaintiff's choice of forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). The moving party can overcome this presumption only by demonstrating that private and public factors clearly favor a trial in an alternative forum. *Id.*

In an ERISA case, a defendant seeking a transfer of venue has the additional burden of surmounting ERISA's special venue provision. 29 U.S.C. § 1132(e)(2); *Flynn v. Daly & Zilch Mason Contractors, Inc.*, No. 00-3027, slip op. at 1-2 (D.D.C. June 6, 2001). This provision states:

> [W]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). By allowing the action to occur in the district where the plan is administered, the special venue provision makes collection efforts efficient, economical, and inexpensive for ERISA Funds. *Int'l B'hood of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.*, 621 F. Supp. 906, 907 (D.D.C. 1985). This result reflects Congress' intent to protect the financial integrity of such funds. *Id.*; *Dugan v. M&W Dozing & Trucking, Inc.*, 727 F. Supp. 417, 419 (N.D. Ill. 1989). Accordingly, courts give special weight to plaintiffs' choices of forum in ERISA cases. *John Flynn v. Ravare Masonry, Inc.*, No. 01-1236, slip op. at 1-2 (D.D.C. Jan. 3, 2002); *Joyce v. E. Concrete Paving Co.*, 1996 WL 762323, at *1 (D.D.C. Sept. 5, 1996).

## B. The Court Denies the Defendants' Motion to Transfer Venue

The defendants have failed to cite to any legal authority in support of their motion. LCvR 7.1(a) (stating "[e]ach motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion"). Additionally, the defendants have failed to acknowledge the many cases that interpret the ERISA venue statute and recognize the uniqueness of ERISA delinquency collection actions. *E.g. Flynn,* No. 00-3027, slip op. at 1-2; *Int'l B'hood of Painters & Allied Trades Union,* 621 F. Supp. at 907. Failing to address this law and any related facts, the defendants failed to meet the burden of surmounting ERISA's special venue provision. *Flynn,* No. 00-3027, at 1-2.

Furthermore, considering that the funds are administered in the District of Columbia and recognizing the case law giving special deference to the plaintiffs' choice of venue in ERISA cases, the court determines that the District of Columbia is a more suitable forum for the trial of this case than the Middle District of Louisiana. *Id.*; Compl. ¶ 2. Additionally, because the defendants provide the court with no compelling reason to transfer venue and fail to meet their heavy burden to demonstrate that a transfer is warranted, the court denies their motion. *Joyce,* 1996 WL 762323 at *1.

Accordingly, it is this 28th day of October 2002,

**ORDERED** that the defendants' motion to transfer venue is **DENIED**.

**SO ORDERED.**

Ricardo M. Urbina
United States District Judge

3

Copies to:

Ira R. Mitzner
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526
202-287-9700
*Counsel for the plaintiff*

Thomas Thibodeaux
525 Jean Lafitte Drive
Baton Rouge, LA 70810
225-413-5177
*Pro se defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN T. JOYCE, ET AL.,                    )
                                          )
                    Plaintiffs,           )
                                          )
        v.                                )        Civil Action No. 99-cv-1697
                                          )             (JLG)          **FILED**
R & R CERAMICS, INC., ET AL.,             )
                                          )                      SEP 2 8 1999
                    Defendants.           )
_____   )                NANCY MAYER-WHITTINGTON, CLERK
                                                               U.S. DISTRICT COURT

<u>ORDER</u>

Before the Court is Defendants' Motion to Change Venue to the
Eastern District of Michigan, and the opposition thereto.  Oral
argument was heard on this date and the Court denied the motion in
open court.  This Order memorializes and supplements the Court's
ruling.

This is an action that arises out of an earlier ERISA action
(<u>Joyce v. Silveri Tile Co.</u>, 97-cv-1635) in which this Court entered
judgment in favor of the Plaintiff.  (Mem. and Order, November 25,
1998.)  There, the Court found those Defendants delinquent in
making required benefit contributions and awarded unpaid
contributions as well as supplemental damages.  The allegations in
this new case are that some of those same defendants are seeking to
avoid the Court's judgment simply by creating "alter ego" entities.
This new case asks the Court to "pierce the corporate veil," and

-1-

require the new company to pay the previous company's judgment (as well as to hold the principals individually liable).

The Defendants sought transfer of the new case on the basis that 1) all of the witnesses and evidence are located and all of the events took place in Michigan; 2) the case will be controlled by Michigan law as it pertains to an "alter ego" action; and 3) there are no ERISA elements left to this action and therefore no deference should be given to the ERISA venue provisions.

The Plaintiffs, for their part, oppose and state that this case is likely to be resolved on summary judgment thereby reducing the need for witnesses to travel to Washington, D.C. for trial. The Plaintiffs also advise that federal common law will apply to this type of action and that this is still an action involving non-payment of benefits under ERISA.

Under 28 U.S.C. § 1404(a), this Court has discretion to transfer a civil action to another district where it might have been brought, "for the convenience of the parties and witnesses, in the interest of justice." The burden to so establish lies with the moving party. See Air Line Pilots Ass'n v. Eastern Air Lines, 672 F.Supp. 525 (D.D.C. 1987). The Defendants, however, have the additional burden of ERISA which allows for a benefit plan to bring an action in the district in which it is administered. Section 502

-2-

(e)(2) of ERISA, 29 U.S.C. 1132 (e)(2).    Here, there is no dispute that the plan is administered in the District of Columbia. Moreover, contrary to the assertion of the Defendants, this case was initiated under ERISA and may properly be characterized as an ERISA collection action.    The Court, therefore, accords the Plaintiffs' choice of venue the deference to which it is entitled under ERISA and denies the motion.

Accordingly, it is by the Court this 27th day of September 1999,

ORDERED that Defendants' Motion to Change Venue to the Eastern District of Michigan is DENIED; and it is further

ORDERED that the Clerk shall send copies of this Order to:

Counsel for Plaintiff
Ira R. Mitzner, Esq.
Bridget O'Connor, Esq.
Dickstein Shapiro Morin
  & Oshinsky, L.L.P.
2101 L Street, N.W.
Washington, D.C.  20037
(202) 785-9700

Counsel for Defendants
Charles H. Carpenter, Esq.
Pepper Hamilton L.L.P.
600 Fourteenth Street, N.W.
Washington, D.C.  20005-2004
(202) 220-1200

JUNE L. GREEN
United States District Court Judge

-3-

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN T. JOYCE, et al.,                    )
                                          )
                    Plaintiffs,           )
                                          )    Civil Action No. 97-12 (EGS)
        v.                                )
                                          )
INTERSTATE CONCRETE, et al.,              )
                                          )           **FILED**
                    Defendants.           )
                                          )         OCT 2 7 1998

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## O R D E R

Before the court is plaintiffs' Motion for Reconsideration of its order of August 24, 1998 transferring this case to the United States District Court for the District of Rhode Island. Upon consideration of plaintiffs' Motion for Reconsideration, and the response thereto, the court VACATES its earlier order and REINSTATES Civil Action No. 97-12.

Plaintiffs are the Trustees of the Bricklayers and Trowel Trades International Pension Fund. Defendants are Louis A. LaFazia, III, Interstate Concrete Pumping, Glenn W. Hawkes, Interstate Concrete Floors, Inc., and Interstate Concrete Construction, Inc. Plaintiffs allege that defendants are liable to them for delinquent pension fund payments.

In its earlier order, the court determined that venue is proper in the District of Columbia under ERISA, 29 U.S.C. § 1132(e)(2) because the Fund is administered in Washington, D.C.,

but that plaintiffs had not shown what contacts render defendants subject to personal jurisdiction in the District of Columbia.

Although defendants did not contest personal jurisdiction over the corporate defendants,[1] the individual defendants did. Plaintiffs have presented evidence that defendants' prior and on-going business activities justify piercing the corporate veil. In the context of ERISA withdrawal liability, the law of this Circuit is that individuals are liable as ERISA employers when conduct justifying piercing the corporate veil is present. *See Connors v. P & M Coal Co.*, 801 F.2d 1373, 1378 (D.C. Cir. 1986); *Connors v. Marontha Coal Co., Inc.* 670 F. Supp. 45, 48 (D.D.C. 1988). There is no reason there should be a different result in the context of ERISA delinquent payment liability. Defendants are therefore subject to personal jurisdiction in the District of Columbia.

IT IS SO ORDERED.

DATE: 10/28/58

_____
EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

_____

[1] Under *I.A.M. National Pension Fund v. Wakefield Industries, Inc.* 699 F.2d 1254, 1259 (D.C. Cir. 1983) agreeing to pay and then paying money into a pension fund located in the District of Columbia, and then failing to make those payments giving rise to this cause of action makes the corporate defendants subject to personal jurisdiction in the District of Columbia.

Notice to:

Ira R. Mitzner, Esq.
Bridget O'Connor, Esq.
DICKSTEIN SHAPIRO MORIN
    & OSHINSKY, LLP
2101 L Street, N.W.
Washington, D.C.   20037-1526

Interstate Concrete
400 Putnam Pike
Smithfield, RI 02917

Interstate Concrete Pumping Company
400 Putnam Pike
Smithfield, RI 02917

Interstate Concrete Floors, Inc.
400 Putnam Pike
Smithfield, RI 02917

Interstate Concrete Construction, Inc.
400 Putnam Pike
Smithfield, RI 02917

Glenn W. Hawkes
400 Putnam Pike
Smithfield, RI 02917

Louis A. LaFazia, III
400 Putnam Pike
Smithfield, RI 02917

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOHN T. JOYCE, et al.,<br>     **Plaintiffs,**<br><br>   v.<br><br>GLENN'S TILE, INC., et al.,<br>     **Defendants.** | Civil Action No. 97-1982<br>(EGS) |

**FILED**

**JUL 1 6 1998**

CLERK U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

### O R D E R

  Upon consideration of defendants' motion for transfer of action, plaintiffs' opposition, and defendants' reply thereto, this Court concludes that defendants' motion to transfer should be DENIED.

### I. Facts

  This case was brought by plaintiffs, the Trustees of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund"), in this Court on August 29, 1997. Plaintiffs filed this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §1001, et seq., on behalf of the IPF recipients, to collect delinquent pension fund contributions from defendant Glenn's Tile, Inc. and Glenn's Tile and Carpet ("Glenn's Tile"), a Michigan employer.

  Contrary to defendants' claims, plaintiffs filed their only action regarding these facts against these defendants in this Court. Defendants erroneously assert that plaintiffs were part of Case No. 97-74471, filed in Michigan. Plaintiffs maintain that



they were added to that case without their knowledge or consent,
that the case was filed after this case was brought in this Court,
and that they were voluntarily dismissed from the Michigan action
at their request.[1]  Defendants have moved to transfer the case to
the Eastern District of Michigan, Southern Division, arguing that
most of the defendants' witnesses reside in the State of Michigan
and are within the reach of process of that court.

## II. Discussion

Under 28 U.S.C. § 1404(a), the elements that must be met in
order to transfer a case are as follows:

> For the convenience of the parties and witnesses, in the
> interest of justice, a district court may transfer any
> civil action to any other district or division where it
> might have been brought.

The moving party bears the burden of establishing that the transfer
of an action is proper.  *Air Line Pilots Ass'n v. Eastern Air
Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987).

## 1. Is venue proper in the Eastern District of Michigan?

As a threshold question, the Court must consider whether the
action could have been brought in the transferee district, here,
the Eastern District of Michigan.  The first issue is determining
whether venue is proper in the Eastern District of Michigan.
Because jurisdiction is based on Section 502 (e)(1) of ERISA, 29

---

[1]  This action was filed August 29, 1997.  The Michigan case
was filed September 2, 1997.  Plaintiffs in that case filed a
voluntary dismissal of Fund plaintiffs on September 27, 1997.

2

U.S.C. §1132 (e)(1), venue may be determined pursuant to Section 502 (e)(2) of that statute, which reads:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Thus, venue is proper in the Eastern District of Michigan, where the defendants reside. However, venue is also proper in this Court, because the plan is administered in the District of Columbia.

2. Convenience of the parties and witnesses.

Plaintiffs initially brought their suit in this Court. Defendants seek to transfer the case to the Eastern District of Michigan. Regarding convenience of the parties, defendants claim that they will be unable to obtain the testimony of witnesses essential to their defense because of the time and expense of travel. Plaintiffs' argument in opposing transfer is that the transfer would require their witnesses to travel to Michigan, causing equal expense and significantly greater inconvenience. Plaintiffs are responsible for overseeing the contribution collections of over 7,000 employers and litigated 150 delinquencies last year alone. Congress allowed venue in the jurisdiction in which funds are administered in order to avoid much of the expense and inconvenience which would result if Fund witnesses were required to travel each time they brought suit against a delinquent employer. See *Central States, Southeast and Southwest Areas*

3

*Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148 (7th Cir. 1989) (quoting legislative history of ERISA supporting such intent). Congress clearly intended to allow venue in this Court in order to increase the efficiency of ERISA litigation. *See Dugan v. M&W Dozing & Trucking, Inc.*, 727 F. Supp. 417, 419 (N.D. Ill. 1989). On balance, plaintiffs have shown that their necessary witnesses and documents are located in the District of Columbia, while defendants argue that they potentially have witnesses who will incur travel expenses and lost income. *See Int'l Brotherhood of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., Inc.*, 621 F. Supp. 906, 908 (D.D.C. 1985). Plaintiffs allege that many of the witnesses on the defendants' potential witness list will be unnecessary because many defenses which these witnesses would be testifying about are unavailable in this type of action. *See id.* at 907-908 (supporting plaintiffs' claim that such defenses are unavailable to defendants). Because of the demonstrated inconvenience to the plaintiff that transfer would cause, and the clear Congressional intent to allow venue in the district where the fund is administered, the convenience to parties and witnesses favors venue in the District of Columbia.

3. Interest of Justice

Another factor for a court to consider in deciding whether to transfer a case is what law will apply to the case because "[t]he interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *See Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. at 8.

4

In this case, the same law would apply to the plaintiffs' claims regardless of where the case is heard because the case is governed by principles of federal labor law.

### III. Conclusion

Given the clear intent of Congress to defer to plaintiffs' choice of venue in ERISA cases, and given the plaintiffs' selection of the District of Columbia and the potential inconvenience which transfer would cause, this Court finds that transfer of this case is not warranted.

It is thereby ORDERED that defendant's motion to transfer is DENIED.

7/16/98
DATE

EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

Notice to:

Ira R. Mitzner
Bridget O'Connor
Dickstein, Shapiro, Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C.  200037-1525

Peter F. Healy, Jr.
Fulbright & Jaworski, LLP
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2615

Dale E. Bock
Citizens Banking Center
328 So. Saginaw, Suite 9001
Flint, MI 48502-1904

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN T. JOYCE, et. al.,          )
                                 )
              Plaintiffs,        )
                                 )
       v.                        )      Civil Action No. 97cv1635
                                 )           (JLG)
                                 )
SILVERI TILE COMPANY, L.C.       )                    FILED
                                 )
              Defendant.         )             FEB 1 1 1998
_____)
                                        NANCY MAYER-WHITTINGTON, CLERK
                                              U.S. DISTRICT COURT

## ORDER

Before the Court is Defendant's Motion to transfer this case to the United States District Court for the Eastern District of Michigan (Southern Division), the Plaintiffs' opposition and the reply thereto. A hearing on this motion was held and argument heard on this date.

As a basis for its request, Defendant states that there is a nearly identical, first-filed, pending case in the Michigan court and that Plaintiffs initially filed their suit there before seeking voluntary dismissal in order to pursue their claims in this Court.

The Plaintiffs respond that they were named as Plaintiffs in the Michigan case without their authorization and that they successfully sought dismissal as soon as this fact was discovered. With regard to the transfer request, the Plaintiffs rely on ERISA venue provisions contained in 29 U.S.C. § 1132(e)(2) that make venue proper "in the district where the plan is administered." Plaintiffs state that the plan is administered here in the District of Columbia and that Congress intended to have an ERISA Plaintiff's choice of forum be given deference.

The Court denies Defendant's request for transfer without prejudice. The Plaintiffs have represented to the Court that this matter can likely be decided on summary judgment with a minimum of discovery. The Court will allow the parties to file any such motion and to begin the discovery process. If it later results that trial in this case is necessary, the Court will allow the parties to revisit the transfer issue.

Accordingly, it is by the Court this 10th day of February 1998,

ORDERED that Defendant's Motion is DENIED without prejudice; it is further

ORDERED that the parties shall begin discovery and coordinate, to the extent possible, with any discovery that occurs in the Michigan case; it is further

ORDERED that the parties shall file any dispositive motions by March 30, 1998; it is further

ORDERED that the parties shall appear for a status call on April 29, 1998 at 10:30 a.m.; and it is further

ORDERED that the Clerk shall send copies of this Order to:

Ira Robert Mitzner, Esq.
Suite 800
Dickstein, Shapiro,
 Morin & Oshinsky, L.L.P.
2101 L Street, N.W.
Washington, D.C.  20037-1526

Arthur H. Blitz, Esq.
Paley, Rothman, Goldstein
 Rosenberg & Cooper, Chtd.
4800 Hampden Lane
Bethesda, MD  20814

JUNE L. GREEN
United States District Court Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN T. JOYCE, et al.,                    )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )        Civil Action No. 96-1343 (PLF)
                                          )
EASTERN CONCRETE PAVING COMPANY,          )
                                          )        **FILED**
        Defendant.                        )
                                          )        SEP - 5 1996

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## ORDER

This matter is before the Court on Defendant's Motion to Change Venue Pursuant to 28 U.S.C. § 1404(a). The Court has considered the brief in support of the motion, the opposition thereto and the exhibits submitted by the parties.

It is clear under ERISA that jurisdiction and venue are proper in both this Court and the United States District Court for the Eastern District of Michigan. 29 U.S.C. § 1132(e)(2). An action under ERISA may be brought "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, . . ." Id. The plan is administered in the District of Columbia, the defendant resides in the Eastern District of Michigan, and it is alleged that the breach took place there. Given the deference normally paid to plaintiff's choice of forum and the special venue provision of ERISA, however, and the Court having found that defendant has not carried its burden of establishing that the case should be transferred to Michigan for the convenience of defendant or its witnesses or in the interests of justice, the Court concludes that the circumstances of this case do not warrant transfer. See, e.g., Dugan v. M & W Dozing & Trucking, Inc., 727 F.

Supp. 417 (N.D. Ill. 1989); Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor

Heating & Airconditioning, Inc., 702 F. Supp. 1253 (E.D. Va. 1988); Campbell v.

Consolidated Building Specialties, 683 F. Supp. 271 (D.D.C. 1987); International

Brotherhood of Painters v. Best Painting & Sandblasting Co., 621 F. Supp. 906 (D.D.C.

1985). Accordingly, it is hereby

ORDERED that Defendant's Motion to Change Venue Pursuant to 28 U.S.C.

§ 1404(a) be and hereby is DENIED; and it is

FURTHER ORDERED that the parties shall file their joint meet and confer

status report under Local Rule 206 before the meet and confer status conference scheduled for

September 9, 1996 at 10:00 a.m.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 9/5/96

FILED

MAR 18 1996

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Clerk, U.S. District Court
District of Columbia

JOHN T. JOYCE, et al.,          )
                                )
          Plaintiffs,           )
                                )
     v.                         )          Civil Action No. 95-1676 SSH
                                )
DETROIT BOARD OF EDUCATION,     )
                                )
          Defendant.            )

## ORDER

Before the Court are defendant's motion for a change of venue and plaintiffs' opposition thereto. Under the plain language of ERISA, an action may be brought "in the district where the plan is administered." 29 U.S.C. § 1132(e)(2). The plan involved in this case is administered in the District of Columbia. The circumstances of this case do not warrant transfer. See Int'l Bhd. of Painters v. Best Painting & Sandblasting Co., 621 F. Supp. 906, 908 (D.D.C. 1985) (citing similar cases in this Circuit also denying transfer).

Accordingly, it hereby is

ORDERED, that defendant's motion to transfer is denied.

SO ORDERED.

_Stanley S. Harris_
Stanley S. Harris
United States District Judge

Date: MAR 18 1996

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

MAR 1 7 1992

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

OHM T. JOYCE, et al.,                )

      Plaintiffs,                       )
                                     )
    v.                               )     Civil Action No. 91-2450 SSH
                                     )
BERTI COMPANY INTERIORS,             )
et al.,                              )
                                     )
      Defendants.                       )

## ORDER

Before the Court is defendants' motion for a change of venue and plaintiffs' opposition thereto. Under the plain language of ERISA, an action may be brought "in the district where the plan is administered." 29 U.S.C. § 1132(e)(2). The plan involved in this case is administered in the District of Columbia. The circumstances of this case do not warrant transfer. See Int'l Bhd. of Painters v. Best Painting & Sandblasting Co., 621 F. Supp. 906, 908 (D.D.C. 1985) (citing similar cases in this Circuit also denying transfer).

Another issue has been raised by these motions. Defendants purportedly filed their motion pro se. However, plaintiffs submit an exhibit indicating that defendants' counsel actually submitted the pleading to the Court. See Plaintiffs' Opposition, Exh. 1. Plaintiffs request appropriate sanctions for defendants alleged violation of this Court's previous Order denying defense counsel's motion to appear pro hac vice. While the Court does not believe sanctions are appropriate at this time, it again refers defendants to Local Rule 104(c), which establishes the requirements for

roceeding pro hac vice in this Circuit.[1]

Accordingly, it hereby is

ORDERED, that defendants' motion to transfer is denied. It
hereby further is

ORDERED, that plaintiffs' request for sanctions is denied
without prejudice.

SO ORDERED.

_Stanley S. Harris_
Stanley S. Harris
United States District Judge

Date:   MAR 1 7 1992

----

[1]  For the benefit of defendants, the Court sets forth the
rule.  Local Rule 104(c) states:
An attorney who is a member in good standing of the bar
of any United States Court or of the highest court of any
State, but who is not a member of the bar of this Court,
may file papers in this Court only if such attorney joins
of record a member in good standing of the bar of this
Court.  All papers submitted by non-members of the bar
of this Court must be signed by such counsel and by a
member of the bar of this Court joined in compliance with
this rule.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 1 4 2000

NANCY MAYER-WHITTINGTON, CLERK
US DISTRICT COURT

JOHN T. JOYCE, et al.,                )
                                                    )
          Plaintiffs,                            )
                                                    )
     v.                                            ) Civ. No. 99-3362 (TFH)
                                                    )
KANPHUS EXTERIOR PANEL CO.,     )
                                                    )
          Defendant.                          )

## ORDER

Defendant has moved to (1) transfer plaintiff's ERISA[1] claims to Utah pursuant to 28

U.S.C. § 1404(a); and (2) dismiss plaintiff's claims under Section 301 of the National Labor

Relations Act. Upon consideration of the pleadings and the attachments thereto, defendant's

motion will be denied.

An action under ERISA may be brought "in the district where the plan is administered

and where the breach took place, or where a defendant resides or may be found..." Id. In this

case, the plan is administered in the District of Columbia, the defendant resides in the Central

District of Utah, and it is alleged that the breach took place there. Venue is therefore proper in

both this Court and the United States District Court for the District of Utah, Central Division. 29

U.S.C. § 1132(e)(2).

Special considerations apply to venue motions in ERISA cases. ERISA expressly

provides venue to employee benefit funds in the district in which the fund is administered, and

there is a strong Congressional policy allowing ERISA funds to sue delinquent employers with

minimal costs to the funds. See Carpenters Amended & Restated Health Benefit Fund v. John

---

[1]    Employee Retirement Income Act of 1974, as amended.

AO 72A

<u>W. Ryan Constr. Co.</u>, 767 F.2d 1170, 1173, 1174 (5th Cir. 1985). Although defendant's arguments under the factors governing § 1404(a) transfers are entitled to some weight, they are not enough to overcome the fund's choice of venue. Defendant's motion to transfer will therefore be denied.

Defendant's second argument is that this Court should dismiss plaintiffs' Section 301 claims because "venue is improper in this District" under 28 U.S.C. 1391(a). Knaphus, however, is an "employer" within the meaning of ERISA. An ERISA employer is subject to personal jurisdiction "where the plan is administered" at the time the action was commenced. 29 U.S.C. § 1132(e)(2). The plan in this case is administered in this District and Knaphus is therefore subject to personal jurisdiction here. "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Knaphus therefore "resides" in this District, and venue is proper.

For the above-stated reasons, it is hereby

ORDERED that defendant's motion to transfer venue and dismiss section 301 claims is DENIED.

SO ORDERED.


April __14__, 2000


Thomas F. Hogan
United States District Judge

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| John Flynn, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 00-3027 (LFO) |
| | ) | |
| Daly & Zilch Mason | ) | |
| Contractors, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

FILED

JUN 0 6 2001

NANCY MAYER WHITTINGTON, CLERK
US DISTRICT COURT

ORDER

Defendant attempted to file a "Notice of Motion" seeking a change in venue on January 23, 2001. Because the defendant's counsel was not then a member of the bar of this Court, the Clerk of Court did not file the papers. After defense counsel was granted leave to appear *pro hac vice* in these proceedings, the Court ordered the filing of defendant's Notice of Motion by fiat on April 3, 2001. Meanwhile, plaintiffs filed an opposition to the Notice of Motion on February 9, 2001. The Notice of Motion did not contain a memorandum of points and authorities in support, and an April 10, 2001 Order, treating the Notice of Motion as a motion, granted defendant the opportunity to file such a memorandum. The defendant did not do so.

Plaintiffs brought this case under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Although 28 U.S.C. § 1404(a) allows a court to transfer venue "for the convenience of the parties and witnesses, in the interest of justice," a defendant seeking a transfer in an ERISA case bears the additional burden of surmounting ERISA's special venue provision. It specifies that a plaintiff may bring an action "in the district where the plan is administered ..." 29 U.S.C. § 1132(e)(2); plaintiff's choice of forum in ERISA cases is accorded

11

special weight in light of the policy considerations behind the efficient administration of multiemployer plans. These considerations are relevant here, as the plaintiff Fund had more than 4,000 delinquent employers as of December 2000. Stupar Decl. ¶ 4. Although defendant's filing indicates that all of the witnesses and evidence are located in New York, plaintiffs' opposition contends that some witnesses are located in Washington, D.C. as well. Pls.' Opp. at 12.

In light of the particular deference owed to plaintiffs' choice of venue in ERISA cases, coupled with defendant's failure to file an appropriate memorandum of points and authorities or any case law in support of its position, the defendant has failed to meet its heavy burden to demonstrate that a transfer is warranted. Accordingly, it is this 5th day of June, 2001, hereby

ORDERED: that defendant's motion to transfer venue is DENIED.


UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN, et al.,                     )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     Civil Action No. 01-1236 (PLF)
                                        )
RAVARE MASONRY, INC.                    )
                                        )     **FILED**
          Defendant.                    )
                                        )     JAN - 3 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### ORDER

This matter is before the Court on Defendant's Motion to Change Venue

Pursuant to 28 U.S.C. Section 1404(a). The Court has considered the brief in support of the

motion, the opposition thereto and the exhibits submitted by the parties.

It is clear under ERISA that jurisdiction and venue are proper both in this Court

and in the United States District Court for the Western District of Louisiana. See 29 U.S.C.

§ 1132(e)(2). An action under ERISA may be brought "in the district where the plan is

administered, where the breach took place, or where a defendant resides or may be found . . ."

Id. In this case, the plan is administered in the District of Columbia, the defendant resides in

the Western District of Louisiana, and it is alleged that the breach took place in the Western

District of Louisiana.

Given the deference normally paid to plaintiff's choice of forum and the special

venue provision of ERISA, 29 U.S.C. § 1132(e)(2), and the Court having found that defendant

has not carried its burden of establishing that the case should be transferred to Louisiana for



19

the convenience of defendant or its witnesses or in the interests of justice, the Court concludes

that the circumstances of this case do not warrant transfer. Although defendant's arguments are

not without merit, in this case they are not enough to overcome plaintiff's choice of forum. <u>See</u>,

<u>e.g.</u>, <u>Dugan v. M & W Dozing & Trucking, Inc.</u>, 727 F. Supp. 417 (N.D. Ill. 1989); <u>Board of</u>

<u>Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Airconditioning, Inc.</u>, 702 F.

Supp. 1253 (E.D. Va. 1988); <u>Campbell v. Consolidated Building Specialties</u>, 683 F. Supp.

271 (D.D.C. 1987); <u>International Brotherhood of Painters v. Best Painting & Sandblasting</u>

<u>Co.</u>, 621 F. Supp. 906 (D.D.C. 1985). Accordingly, it is hereby

      ORDERED that Defendant's Motion to Change Venue Pursuant to 28 U.S.C.

Section 1404(a) is DENIED; and it is

      FURTHER ORDERED that the parties shall file a joint meet and confer status

report under Local Civil Rule 16.3 on or before January 25, 2002.

      SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 1/2/02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

FEB 0 5 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JOHN FLYNN, *et al.*,                    )
                                         )
            Plaintiff,                   )
                                         )
     v.                                  )     Civil Action No. 1:01CV0098 (ESH)
                                         )
FISCHER TILE & MARBLE, INC.,             )
                                         )
            Defendant.                   )
                                         )

## MEMORANDUM OPINION

Before the Court are defendant's motion to dismiss, plaintiffs' opposition thereto, and defendant's reply. Plaintiffs seek contributions that they allege defendant failed to pay to an employee benefit plan, in violation of Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145. In response, defendant has moved to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or in the alternative, to transfer the case to California pursuant to 28 U.S.C. § 1404(a). Based upon the pleadings and the record before it, this Court finds that the question of venue is inextricably intertwined with the merits of the case, and therefore, it will decline to dismiss or to transfer the action.

## BACKGROUND

Plaintiffs are the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF"). (Compl. ¶ 1.) The IPF is an "employee benefit plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37), authorized to effect collections on behalf of the

1

22

International Masonry Institute ("IMI") and Bricklayers and Allied Craftspersons ("BAC"). (*Id.* ¶ 4.) It is also authorized to file suit on behalf of affiliated local union pension funds (the "Local Funds").[1] (*Id.* ¶ 4.)

Defendant Fischer Tile & Marble, Inc. ("Fischer") is a licensed California tile contractor in Sacramento, California. (Def. Mot. To Dismiss at 1.) Fischer has long been associated with the local unions, BAC, and the Tile Contractors Association of America ("TCAA"). In 1966, TCAA and the BAC entered into a jurisdictional agreement that was signed at the time by the president of Fischer. (*Id.* at 2.) The agreement defined the scope of work to be assigned to tile setters, and adopted a procedure for the resolution of jurisdictional disputes. (*Id.*) This agreement expired in 1969. In 1985, the BAC and TCAA negotiated their first collective bargaining agreement (the "Agreement") covering wages, hours, and working conditions for tile setters. (*Id.* at 3.) Plaintiffs allege that defendant was bound to this Agreement through its association with the BAC and TCAA, and has failed to make certain payments to the IPF, IMI, BAC, and local funds that were due under the Agreement. (Compl. ¶ 7.) Defendant, conversely, disputes that it was bound to this or any successor agreement.

On January 19, 2001, plaintiffs filed suit under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(A)(3), to collect delinquent pension fund payments to the IPF dating back to January 1997. Defendant now moves to dismiss or transfer the action for improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or the alternative, to transfer to the Eastern District of California pursuant to 28 U.S.C. § 1404(a).

---

[1] The affiliated local union funds are the Bricklayer Local No. 3, the Northern California Tile Industry Health And Welfare Trust Fund, the Bricklayer Local No. 19 Pension Trust Fund, and the Bricklayer Local No. 19 Apprenticeship and Training Trust Fund.

2

# ANALYSIS

I.    **Motion To Dismiss Under Fed. R. Civ. P. 12(b)(3)**

A claim should not be dismissed under Fed. R. Civ. P. 12 "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Canady v. Nat'l Hosp. for Orthopaedics and Rehab.*, 1995 WL 322449, at *1 (D.D.C. 1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In deciding a motion to dismiss, a court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs." *Fitts v. Fed. Nat'l Mortgage Ass'n*, 44 F. Supp. 2d 317, 321 (D.D.C. 1999).  However, a court need not accept plaintiffs' legal conclusions as true.  *See Artis v. Greenspan*, 158 F.3d 1301, 1306 (D.C. Cir. 1998).  On a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), facts must be presented that will defeat plaintiff's assertion of venue.  5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1352 (2d ed. 1990); *see, e.g., Totalplan Corp. of Am. v. Lure Camera, Ltd.*, 613 F. Supp. 451, 459 (W.D.N.Y. 1985).

Under the venue provision of ERISA, a party may bring a collection action in the district where the relevant ERISA plan is administered.  29 U.S.C. § 1132(e)(2).  Plaintiffs assert that venue is proper here because the pension funds were administered in the District of Columbia when plaintiffs filed suit, and the defendant is bound to the funds by the 1985 Agreement.  In response, defendant argues that it is not bound to the 1985 Agreement.  Citing *Ruan Transp. Corp. and Dist. Lodge No. 77*, 234 N.L.R.B. 241 (1978), defendant asserts that there are two ways an employer can be bound to a collective bargaining agreement – (1) by actually signing the Agreement itself, or (2) by delegating its bargaining authority to a multi-employer group, which

3

executes an agreement on behalf of its delegating members.  (Def. Mem. at 4.)  It is undisputed

that defendant did not sign the national agreement between BAC and TCAA; however, Fischer

also contends that it did not delegate its bargaining authority to the TCAA for it to negotiate and

enter into the Agreement on defendant's behalf, while plaintiffs argue that defendant was a

member of the TCAA and did delegate its bargaining authority to that organization.

If defendant is bound to the Agreement, venue is proper in this district.  Plaintiffs' claim

that Fischer is liable for contributions to the Fund, however, also will turn largely – if not entirely

– on whether defendant is bound to the Agreement.  Venue in this case is therefore inextricably

intertwined with the underlying merits.  In this instance, it is proper to defer resolution of the

venue issue until the time of trial, or at least until discovery has been completed.[2]  *See Valentin v.*

*Hosp. Bella Vista*, 254 F.3d 358, 364 (1st Cir. 2001); *Bell v. United States*, 127 F.3d 1226, 1228

(10th Cir. 1997); *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 198 (D.C.Cir.,1992); *Collins*

*v. New York Cent. Sys.*, 327 F.2d 880 (D.C.Cir. 1963).  Defendant's motion to dismiss for

improper venue must therefore be denied.[3]

_____

[2]/ Among the many unresolved factual issues that are relevant to both venue and the underlying merits are whether defendant is bound to the Agreement because (1) Fischer is a member of TCAA and the TCAA agreement with the BAC was bargained "for and on behalf of [its] ... members," (2) Fischer was listed as a member of TCAA during the time of the Agreement, (3) Fischer's termination letter to TCAA establishes that Fischer considered itself bound to the TCAA agreement, and (4) Fischer's president was on TCAA's Board of Directors at the time the bargaining agreement was signed.

[3]/ Defendant relies largely on *Ruan Transp. Corp.*, 234 N.L.R.B. 241 (1978) and *Shearon Envtl. Design Co. v. Laborers' Dist. Council*, 1993 WL 476232, 144 L.R.R.M (BNA) 2770 (E.D. Pa. Nov. 18, 1993), in support of its argument to dismiss.  In these cases, however, the courts' rulings that defendants were not bound to collective bargaining agreements were made after bench trials, rather than in response to a motion to dismiss, as here.

II.   **Discretionary Transfer under 28 U.S.C. § 1404(a)**

Defendant also argues that this case should be transferred to the Eastern District of California pursuant to 28 U.S.C. § 1404, which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden is on the moving party to demonstrate that the "balance of convenience of the parties and witnesses and the interest of justice are in [its] favor." *Consol. Metal Products, Inc. v. Am. Petroleum Inst.*, 569 F. Supp. 773, 774 (D.D.C. 1983).

"Section 1404(a) . . . vests 'discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness.'" *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). In evaluating a motion to transfer pursuant to 28 U.S.C. § 1404(a), a court must weigh a number of private interest and public interest factors, and plaintiff's chosen forum is of paramount consideration. *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22 (D.D.C. 1997). That choice should rarely be disturbed unless the balance is strongly in favor of the defendant, *Pain v. United Technologies Corp.*, 637 F.2d 775 (D.C. Cir. 1980), although plaintiffs' forum selection has less weight when that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter.

In determining a §1404(a) motion, a court should consider: (1) a plaintiff's privilege of choosing the forum; (2) convenience of the parties; (3) the location of counsel; (4) convenience of witnesses, including expert witnesses; (5) the location of books and records; (6) the speed with which the underlying civil case may be resolved by the relevant courts; and (7) the interests of

5

justice. *Starnes v. McGuire*, 512 F.2d 918, 922 (D.C. Cir. 1974); *see also* 15 Charles Alan

Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 3848-3854 (2d ed. 1986). In

addition, other factors may be relevant to a motion to transfer, including ease of access to sources

of proof; availability of compulsory process to compel the attendance of unwilling witnesses; the

amount of expense for willing witnesses; the relative congestion of the calendars of potential

transferee and transferor courts; and other practical aspects of expeditiously and conveniently

conducting a trial. *Securities & Exch. Comm'n v. Page Airways, Inc.*, 464 F. Supp. 461, 463

(D.D.C. 1978).

      Nonetheless, a court may not transfer simply because it believes that another forum may

be superior to plaintiff's chosen forum. *Shapiro, Lifshitz & Schram v. Hazard*, 24 F. Supp. 2d 66

(D.D.C. 1998). Under the ERISA venue provision, venue is proper in the District of Columbia

because the IPF was administered here when plaintiffs filed suit. That provision reflects

Congress's intent to foster continued viability of employee benefit plans and to promote the

efficient collection of employer obligations by permitting a fund to file all legal actions in one

central location. *Employees Savings Plan of Mobil Oil Corp. v. Vickery*, 99 F.R.D. 138, 144

(S.D.N.Y. 1983). If the plaintiffs were required to litigate where each employer resided, the

resulting hardship and expense would undermine the financial integrity of funds, therefore

defeating the goal of efficient administration of ERISA plans. *Dugan v. M&W Dozing &*

*Trucking, Inc.*, 727 F. Supp. 417, 419 (N.D. Ill. 1989). Recognizing the important policy goals at

stake, Courts in this jurisdiction have consistently relied upon ERISA's controlling venue

provision and rejected attempts by employers to transfer these plaintiffs' District of Columbia

collection cases to other forums. *See, e.g., Flynn v. Daly & Zilch Mason Contractors, Inc.*, Civil

6

No. 00-3027, Order (D.D.C. 2001). *Flynn v. Ravare Masonry, Inc.*, Civil No. 01-1236, Order

(D.D.C. 2002).

The traditional §1404(a) factors also weigh against transfer. Defendant argues for

transfer primarily because the documents and witnesses relating to the agreements and relevant

audits are located in California, as are the local funds for which plaintiffs seek recovery.

Plaintiffs, however, have offered a roughly equal number of witnesses and categories of

documents that are located in or near the District of Columbia. All of the plaintiffs' witnesses for

the IPF, for example, are located in or near the District of Columbia and would be greatly

inconvenienced if this case were transferred to California. Other witnesses for plaintiffs, such as

the officers and representatives of BAC who were involved in the negotiation of the TCAA

Agreement, are also located in Washington, D.C. In addition, the records and administrative

staff of TCAA are in Wheaton, Maryland, a nearby suburb. Those factors that may counsel for

transfer are therefore substantially outweighed by the combination of plaintiffs' choice of forum,

the policy behind bringing ERISA suits in the district in which the fund is administered, and the

many witnesses and documents located in and around the District of Columbia. The Court will

therefore decline to transfer the case under 28 U.S.C. § 1404.

## CONCLUSION

For these reasons, the Court denies defendant's motion to dismiss or transfer for improper

venue.

ELLEN SEGAL HUVELLE
United States District Judge

Dated: 2/4/02

7

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

FEB 0 5 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| JOHN FLYNN, *et al.*, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 1:01CV0098 (ESH) |
| | ) |
| FISCHER TILE & MARBLE, INC., | ) |
| Defendant. | ) |

## ORDER

Upon consideration of defendant's motion to dismiss, plaintiffs' opposition, defendant's reply, and the entire record contained therein, and for the reasons stated in the Memorandum Opinion, it is hereby

**ORDERED** that defendant's motion to dismiss [14-1] is **DENIED**; and it is

**FURTHER ORDERED** that defendant's to transfer [14-2] is **DENIED**; and it is

**FURTHER ORDERED** that plaintiffs' request for oral hearing on defendant's motion to dismiss, or in the alternative, to transfer is **DENIED**; and it is

**FURTHER ORDERED** that this matter is set down for an initial scheduling conference on March 7, 2002 at 10:00 a.m.

**SO ORDERED**.

ELLEN SEGAL HUVELLE
United States District Judge

Dated: 2/4/02

8

23

**EXHIBIT D**

LEXSEE 1993 US DIST LEXIS 14496



Positive
As of: Aug 04, 2008

**LISA M. KIELY and STEPHEN L. KIELY, et al., Plaintiffs, v. THE SHORES GROUP, INC., et al., Defendants.**

**Case No. 93-2194-JWL**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*1993 U.S. Dist. LEXIS 14496*

**September 29, 1993, Decided
September 29, 1993, Filed**

**COUNSEL:** [*1] For LISA M. KIELY, individually, STEPHEN L. KIELY, individually, HUNTER KIELY, a minor nfr Lisa M. Kiely nfr Stephen L. Kiely, plaintiffs: Karen D. Wedel, J. Brett Milbourn, Walters, Bender & Strohbehn, Kansas City, MO.

For PATRICK SHORES, GREG BROWN, defendants: John E.S. Kramar, Houston, TX. For ROBERT BURN-STEIN, defendant: Robert A. Kumin, Robert A. Kumin, P.C., Mission, KS. For CARROLL H. SCHLADER, JR., defendant: Douglas D. Chunn, Marianne Lloyd, Jacksonville, FL. For 1ST SERVICES INC, defendant: Stephen J. Dennis, Lisa A. Dunbar, Niewald, Waldeck & Brown, Kansas City, MO. For PROVIDENT INDEMNITY LIFE INSURANCE COMPANY, defendant: Charles F. Marvine, Jr., Janet I. Blauvelt, Dysart, Taylor, Penner, Lay & Lewandoski, Kansas City, MO. For ELARBEE THOMPSON & TRAPNELL, defendant: Sally B. Surridge, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO. James M. Warden, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS. For HENRY D. THOMPSON, defendant: Jason R. Brown, Douglas C. McKenna, Watson, Ess, Marshall & Enggas, Olathe, KS. For CIGNA INSURANCE COMPANY, LIFE INSURANCE COMPANY OF NORTH AMERICA, INSURANCE COMPANY OF NORTH AMERICA, defendants: Richard N. [*2] Bien, James A. Durbin, Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, MO. Craig T. Kenworthy, Swanson, Midgley, Gangwere, Clarke & Kitchin, Overland Park, KS. John K. Train, III, Randall L. Allen, Suzanne Smith, Alston & Bird, Atlanta, GA.

**JUDGES:** Lungstrum

**OPINION BY:** JOHN W. LUNGSTRUM

**OPINION**

**MEMORANDUM AND ORDER**

This matter comes before the court on the motion of defendant Carroll H. Schlader, Jr. to dismiss for lack of personal jurisdiction or in the alternative to transfer venue (Doc. # 55) and the motion of defendant Henry D. Thompson, Jr. to dismiss for lack of personal jurisdiction (Doc. #81). Also before this court is plaintiffs' motion to compel discovery (Doc. #80). For the reasons set forth below, the motion of Carroll H. Schlader, Jr. ("Schlader") is denied on all grounds, and the motion of Henry D. Thompson, Jr. ("Thompson") is also denied. Plaintiffs' motion to compel Provident Indemnity Life Insurance Company to respond to their discovery requests is granted.

*I. Facts*

The court incorporates, for purposes of this motion, the facts set out in its previous order, dated September 23, 1993, denying Provident Indemnity Life Insurance Company's motion to dismiss or in the alternative [*3] quash service of process (Doc. #100). Additionally, the court notes the following pertinent facts.

Defendant Thompson is a resident of Dublin, Laurens County, Georgia, and is the controller of Edenfield

Food Service in Dublin. Edenfield Food Service is an independent affiliate of Tom's Distributor's Inc. In or about March of 1990, Thompson was approached by Patrick Shores who requested that he serve as a trustee of what was referred to as the "Tom's Distributors Employee Benefit Trust" (the "Trust"). Subsequently, Thompson executed a Declaration of Trust and served as a trustee until May of 1991. All of Thompson's activities as trustee occurred in the state of Georgia. Thompson never received compensation for his services as trustee other than reimbursement for expenses.

Defendant Schlader is a resident of Jacksonville, Florida. He too was contacted by Patrick Shores and served as a trustee for the Trust from March of 1990 until March of 1991. Schlader is Vice President of Jacksonville Tom's Distributors, Inc., and has worked for the company since 1976. As does Thompson, Schlader asserts that he was not aware that any participant of the Trust was a resident of Kansas or that anyone [*4] involved with the trust solicited participants in the state of Kansas.

The Trust was created to provide medical, accident, death and disability benefits for the employees of Tom's Foods distributors and their dependents through a group insurance plan. Plaintiffs are either employees of Tom's Foods or dependents of an employee and as such assert coverage under the group insurance plan.

Plaintiffs allege that defendants Carroll and Schlader, as fiduciaries of the Trust, breached their fiduciary obligations with respect to the Trust and in so doing are liable to plaintiffs for damages under *29 U.S.C. § 1105* of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See 29 U.S.C. § 1101, et seq.* Plaintiffs also allege common law claims of fraud, negligent misrepresentation, breach of contract, and promissory estoppel against these defendants.

Both Schlader and Thompson assert that they have no contacts with the state of Kansas, or alternatively that any such contacts are isolated and attenuated and therefore insufficient to establish personal jurisdiction. Plaintiffs assert that Patrick Shores was [*5] an agent of these defendants who acted on behalf of the trustees in soliciting plaintiffs to participate in the group health insurance plan of Tom's Foods and its Employee Benefit Trust. Thus, plaintiffs argue that Shores' direct contacts with the state of Kansas may be attributed to Thompson and Schlader enabling the court to properly assert jurisdiction over their persons. Alternatively, plaintiffs argue personal jurisdiction is proper under ERISA's nationwide service of process provision at *29 U.S.C. 1132(e).*

*II. Motions to Dismiss for Lack of Personal Jurisdiction*

Defendants Schlader and Thompson have filed motions to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)* for lack of personal jurisdiction. Plaintiffs opposing a motion to dismiss for lack of personal jurisdiction have the burden of making a prima facie showing that the court may properly exercise personal jurisdiction over the defendant. *Carrothers Constr. Co. v. Quality Service & Supply, Inc., 586 F. Supp. 134, 135-36 (D. Kan. 1984).* In diversity of citizenship actions, the law of the forum state determines whether personal jurisdiction [*6] is obtainable over a nonresident defendant and a court is required to determine whether jurisdiction is proper under a state's long-arm statute as well as under a minimum contacts analysis. *See Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988).*

This case presents a close question as to whether the court may properly assert personal jurisdiction over defendants Schlader and Thompson under the Kansas long-arm statute and a *Fourteenth Amendment* due process analysis. It is unclear whether plaintiffs have established that these defendants have engaged in conduct or have established a connection with the state of Kansas "such that [they] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).* However, plaintiffs have presented the court with an alternative basis for jurisdiction. Plaintiffs argue that personal jurisdiction is proper under *29 U.S.C. § 1132(e)* of ERISA, which provides for nationwide service of process. For the reasons set forth below, the court finds that personal jurisdiction over [*7] Schlader and Thompson is obtainable under *§ 1132(e)* and that jurisdiction over these defendants comports with due process.

The ERISA provision dealing with jurisdiction and service of process, *29 U.S.C. § 1132(e),* provides:

> (e) Jurisdiction . . . (2) Where an action under this title is brought in a district court of the United States, . . . process may be served in any other district where a defendant resides or may be found.

This provision has been interpreted to authorize national service of process. *United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1086 (1st Cir. 1992). Rule 4(e) of the Federal Rules of Civil Procedure* provides that process may be served in the manner prescribed by federal statute. Thus, Schlader and Thompson, who reside in Florida and Georgia respectively, were properly served. This does not end the inquiry, however, for service and personal jurisdiction must comply with constitutional due process requirements.

The Supreme Court's decisions in *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945) and its progeny require that defendants **[*8]** in a state court action have sufficient minimum contacts with the forum state. This minimum contacts analysis arises from the *due process clause of the Fourteenth Amendment*. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). A federal court must apply the same minimum contacts analysis in a diversity case when personal jurisdiction is obtained through a state long-arm statute. *See U.S. Telecom, Inc. v. Hubert* 678 F. Supp. 1500, 1506 (D. Kan. 1987) (citing *Haile v. Henderson National Bank*, 657 F.2d 816, 826 n. 10 (6th Cir. 1981)). However, in the context of statutes authorizing nationwide service of process, federal courts must focus on the *due process clause of the Fifth Amendment*. *Id; see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 202 (E.D. Pa. 1974); *Bamford v. Hobbs*, 569 F. Supp. 160, 165 (S.D. Tex. 1983). Plaintiffs argue that *Fifth Amendment* due process does not require that defendants have minimum contacts with the state of Kansas, but rather due process requires only minimum contacts **[*9]** with the United States.

Courts are split as to whether minimum contacts with the United States is sufficient when a federal statute authorizes nationwide service of process. Some courts have held that the *Fifth Amendment* requires something less than minimum contacts with the forum state as mandated by *International Shoe Corp*. *See Kinsey v. Nestor Exploration Ltd.*, 604 F. Supp. 1365, 1373 (E.D. Wash. 1985); *GRM v. Equine Investment & Management Group*, 596 F. Supp. 307, 312-15 (S.D. Tex. 1984); *Bamford*, 569 F. Supp. at 165-67; *Ritter v. Zuspan*, 451 F. Supp. 926, 928-30 (E.D. Mich. 1978); *FTC v. Cockrell*, 431 F. Supp. 558, 560 (D. D.C. 1977). Other courts, however, have held that minimum contacts with the state in which the district court sits is unnecessary. *See U.S. Telecom, Inc.*, 678 F. Supp. at 1505 (citing *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.*, 634 F. Supp. 1341, 1345-48 (S.D.N.Y. 1986); *City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463, 467 (M.D. Pa. 1985); **[*10]** *Ethanol Partners Acc. v. Wiener, Zuckerbrot, Weiss & Brecher*, 617 F. Supp. 300, 306-07 (E.D. Pa. 1985); *Piper Acceptance Corp. v. Slaughter*, 600 F. Supp. 169, 171 (D. Colo. 1985); *Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D. D.C. 1984); *Clement v. Pehar*, 575 F. Supp. 436, 438-39 (N.D. Ga. 1983); *Gilbert v. Bagley*, 492 F. Supp. 714, 746-47 (M.D.N.C. 1980)).

Every circuit court that has addressed the issue has held that only a national contacts analysis is required when process is served under a federal statute's national service of process provision. 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.1 at 311 (1987); *see, e.g., United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993); *United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414-16 (9th Cir. 1989); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671-72 (7th Cir. 1987), **[*11]** cert. denied, 485 U.S. 1007, 99 L. Ed. 2d 700, 108 S. Ct. 1472 (1988); *Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300, 314-15 (2nd Cir. 1981), cert. denied, 454 U.S. 1148, 71 L. Ed. 2d 301, 102 S. Ct. 1012 (1982); *FTC v. Jim Walter Corp.*, 651 F.2d 251, 256 (5th Cir. 1981).

The Tenth Circuit has not ruled on the issue and the courts within this district have reached different conclusions. Three courts within this district have held that only minimum contacts with the United States is necessary. *In re Donald G. Atteberry, DVM, P.A. v. Barclays Bank PLC*, 1993 WL 346057 (D. Kan., Aug 24, 1993) (Crow, J.); *Monarch Normandy v. Normandy Square*, 817 F. Supp. 899, 902 (D. Kan. 1993) (Belot, J.); *U.S. Telecom, Inc. v. Hubert*, 678 F. Supp. 1500, 1507-08 (D. Kan. 1987) (O'Connor, J.); see also *Pioneer Properties, Inc. v. Martin*, 557 F. Supp. 1354, 1358 (D. Kan. 1983) (Crow, J.), appeal dismissed, 776 F.2d 888 (10th Cir. 1985). Compare with *Farr v. Designer Phosphate and Premix Int'l, Inc.*, 777 F. Supp. 890, 893 (D. Kan. 1991) **[*12]** (rejecting national contacts test); *Wichita Federal Savings & Loan Assn. v. Landmark Group Inc.*, 657 F. Supp. 1182 (D. Kan. 1987) (requiring some contacts with the forum state). It seems from these cases that the more recent trend is to require national contacts as opposed to the more stringent requirement of contacts with the forum in which the district court sits. This court is persuaded to follow the majority of courts and finds that, along with proper service, only minimum contacts with the United States is required under a nationwide service provision.

Therefore, the court holds that ERISA's nationwide service provision, 29 U.S.C. § 1132(e)(2), provides this court with personal jurisdiction over defendants Schlader and Thompson and both defendants' motions to dismiss for lack of personal jurisdiction are denied on this ground. Schlader was properly served and had notice of this action, and because he resides in Florida, he has sufficient contacts with the United States. Similarly, Thompson was properly served and had notice of this action, and because he resides in Georgia, has sufficient contacts with the United **[*13]** States. Further, because all of plaintiff's claims arise from a common nucleus of operative facts, the court finds that it has supplemental jurisdiction over all claims asserted against these defendants. *Piper Acceptance Corp. v. Slaughter*, 600 F. Supp. 169, 171-72 (D. Colo. 1985) (citing *International Con-*

*trols Corp. v. Vesco*, 593 F.2d 166, 175 n.5 (2d Cir.), *cert. denied*, 442 U.S. 941, 61 L. Ed. 2d 311, 99 S. Ct. 2884 (1979), *Robinson v. Penn Central Co.*, 484 F.2d 553 (3d Cir. 1973); C. Wright, Law of Federal Courts § 10 at p.32 (4th Ed. 1983)).

### III. Motion to Transfer Venue

In the alternative, defendant Schlader moves that the court transfer venue to the United States District Court for the Northern District of Georgia according to 28 U.S.C. § 1404(a). Schlader contends that this forum would be more convenient for the parties and the witnesses because a majority of the defendants and the potential witnesses reside in the vicinity of Atlanta, Georgia.

The party moving to transfer the case bears the burden of establishing that the forum is inconvenient. [*14] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). District courts have discretion to evaluate motions to transfer, giving consideration to convenience and fairness in each individual case. *Id*. In deciding motions to transfer, district courts must weigh the competing equities, giving great weight to the plaintiff's choice of forum. *Allstate Ins. Co. v. Employers Reinsurance Corp.*, 715 F. Supp. 1502, 1502-03 (1989). The evidence should be strongly in favor of the transfer or the plaintiff's forum choice should not be disturbed. *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).

In this case, the weight accorded to plaintiffs' choice of venue is diminished to some extent by the lack of contacts the state of Kansas has with the administration of the Trust and with the trustees involved in this case. At the same time, however, the weight given to plaintiffs' choice of forum must be increased somewhat to reflect Congressional policies favoring plaintiffs' choice of venue in ERISA actions. *See Int'l. Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., Inc.*, 621 F. Supp. 906, 907 (D. D.C. 1985); [*15] *Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Protection, Inc.*, 578 F. Supp. 94, 95-96 (D. Md. 1983).

Plaintiffs have named seventeen defendants in its second amended complaint. The defendants include individuals residing in Alabama, Georgia, Florida and South Carolina, as well as companies located in Georgia and Pennsylvania. No particular forum will be convenient for all parties. To prevail on a motion to transfer a movant must demonstrate that the balance of considerations tilts strongly in its favor. *Wm. A. Smith Contracting Co., Inc. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972). The mere shifting of inconvenience from one party to another is insufficient to support the transfer of

an action. *Triple A Partnership v. M.P.L. Communications, Inc.*, 629 F. Supp. 1520, 1526 (D. Kan. 1986). Defendant Schlader has not met his burden to show that a transfer of venue would do more than simply shift the inconvenience of this litigation from one party to another. Thus, plaintiffs' choice of forum will not be disturbed and defendant Schlader's motion [*16] to transfer venue is denied.

### IV. Motion to Compel Discovery

The court has also considered plaintiffs' motion to compel Provident Indemnity to respond to its discovery requests. Plaintiffs served interrogatories and a request for production of documents on defendant Provident Indemnity. Provident Indemnity refused to comply until its motion to dismiss had been ruled on by this court. As Provident Indemnity's motion to dismiss was denied on September 23, 1993 (Doc. #100), the court now orders Provident Indemnity to comply with plaintiffs' discovery requests. Provident Indemnity shall have until October 8, 1993 to respond to plaintiffs' discovery requests.

### V. Conclusion

As set forth above, the court grants plaintiffs' motion to compel. The court has also found that it may properly assert personal jurisdiction over defendants Schlader and Thompson. The court is aware, however, of the burden this litigation places upon these trustees who allege they served gratuitously and have never had any contacts with the state of Kansas or the plaintiffs. Because of the complexity of the claims in this action as well as the existence of multiple parties, the court finds it necessary to [*17] add to the requirements of its scheduling order of September 3, 1993. The court orders that the plaintiffs and defendants Schlader and Thompson attempt to formulate a joint discovery plan to be submitted to the court, with a view toward an early cut off of discovery pertinent to these defendants' liability, including whether or not a stay of or limitation on other discovery would be feasible in the interim and a proposed early date for these defendants to file motions for summary judgment. Such proposed plan shall be submitted by October 8, 1993. If any other trustee defendant believes he is similarly situated to defendants Schlader or Thompson, he should join with those defendants and the plaintiffs in this effort to expedite and attempt to minimize litigation expenses.

**IT IS THEREFORE ORDERED BY THE COURT** that the motion of defendant Henry D. Thompson to dismiss for lack of personal jurisdiction (Doc. #81) is denied.

**IT IS FURTHER ORDERED** that the motion of defendant Carroll H. Schlader, Jr. to dismiss for lack of

1993 U.S. Dist. LEXIS 14496, *

personal jurisdiction or in the alternative to transfer venue (Doc. #55) is denied.

**IT IS FURTHER ORDERED** that the court's scheduling order is modified as [*18] set forth above.

**IT IS FURTHER ORDERED** that plaintiffs' motion to compel discovery (Doc. #80) is granted.

**IT IS SO ORDERED.**

Dated this 29th day of September, 1993 at Kansas City, Kansas.

John W. Lungstrum, United States District Judge

**EXHIBIT E**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN FLYNN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 1:08-CV-0588-PLF |
| JOHN DANIEL BERICH, INDIVIDUALLY, et al., | ) |
| Defendants. | ) |

## DECLARATION OF DAVID F. STUPAR

Pursuant to 28 U.S.C. § 1746, I David F. Stupar, hereby declare as follows:

1.  I am the Executive Director of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and have served in that capacity since May 1993. As Executive Director, I supervise the collection of employer delinquencies and Withdrawal Liability. I have personal knowledge of the facts stated herein and, if called to testify as a witness, I could and would competently testify as set forth above. The Northwest Bricklayers Pension Plan has assigned any and all claims relating to Withdrawal Liability owed by Dan Berich, Inc. to the IPF.

2.  The Fund is a multiemployer employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Fund provides pension benefits to employees working in the building and construction industry under contracts negotiated between Bricklayer local unions and employers. Pursuant to these contracts, the employers are obligated to make contributions to the Fund in order to fund the benefits provided to the participants and beneficiaries.

3.  An employer withdraws from a plan by ceasing to have an obligation to contribute under the plan and either (i) continuing to perform work in the jurisdiction of the collective

bargaining agreement of the type for which contributions were previously required, or (ii) resuming such work within five years after the date on which the obligation to contribute under the plan ceases. Upon withdrawal from a plan, the IPF assesses the employer's Withdrawal Liability, provides the employer with a written notice of the assessment and a payment schedule, and collects Withdrawal Liability pursuant to the payment schedule.

4. The employers that contribute to the Fund are engaged in the building and construction industry. There are over 12,000 construction industry employers that currently participate in the Fund. Additionally, there are approximately 78,000 participants and beneficiaries who participate in the Fund each year.

5. The Fund is administered solely in Washington, D.C., and all Fund documents relating to contributing and withdrawing employers, including the files for each employer, which contain the collective bargaining agreements, reports and other information, are located and maintained in Washington, D.C. The Fund does not have any offices in Colorado or any place other than the District of Columbia. Of the fourteen (14) trustees currently serving on the Board of the Fund, none of them live in Colorado and none have an office in the state.

6. The Fund has Trustees in various areas of the country and Canada because it is an international fund that represents many different regions. The location of Trustees does not, and was not intended to, facilitate the Fund's ability to handle business in those areas. In fact, none of the Trustees of the Fund will be called as witnesses in this matter because they do not have any knowledge of any of the issues at hand. They are only nominal parties to this action, which is brought on behalf of the Fund itself. Similarly, none of the trustees of the local funds that have assigned their claims to the IPF in this matter have any relevant knowledge or will be testifying for the Plaintiffs either.

2

7.  Ira R. Mitzner has been counsel to the Fund for twenty five (25) years.  Mr. Mitzner is located in Washington, D.C.  The Fund retains no counsel to regularly institute actions on its behalf in Colorado.  If this case were transferred to the United States District Court for the District of Colorado, the Fund would be forced to retain separate local counsel to assist Ira R. Mitzner.

8.  Currently, there are over 500 Fund employers located throughout the United States who are at least three months delinquent or who have withdrawn from the Fund.  The Fund has well over 200 delinquencies and withdrawals that are currently being pursued by Fund counsel in Washington D.C., with dozens of cases actually being litigated at any given time.  Due to the large number of employers who are delinquent or who have withdrawn and who require the Fund to obtain legal representation, the ability to litigate these cases in Washington, D.C. greatly enhances the Fund's administrative efficiency and saves the Fund large sums of money in attorneys' fees, allowing the Fund to devote more of its assets to the interests of its participants and beneficiaries.  This is money that the Fund has available for the benefit of its participants and beneficiaries.

9.  In accordance with ERISA, this action was instituted in Washington, D.C., where the Fund is administered.  It would place extreme hardship on me and my staff if this matter were transferred to Colorado, as requested by the Defendants.  As stated, the files of the Fund are located in Washington, D.C. and the withdrawal liability calculations relating to the Defendants were also carried out in the Washington, D.C area.  Also, if the Fund's cases were subject to transfer out of the District of Columbia to the various employers' home jurisdictions, I would have to spend virtually all of my time traveling around the country attending to the numerous Fund lawsuits, which would severely hinder my ability to run the day-to-day operations of the Fund.

3

10.  Given the thousands of Fund delinquencies and withdrawals and the literally dozens of cases actually being litigated at any given time, it would be virtually impossible for me and my staff to ensure the collection of employer delinquencies and withdrawal liability if the Fund's ERISA actions were transferred to the location of the employer. For that reason, virtually all of the withdrawal liability and collection actions on behalf of the Fund filed in the past 25 years have been prosecuted in the District of Columbia by Fund counsel.

11.  I expect to be the primary witness called by the Fund if this matter goes to trial. If called as a witness, I will testify to such matters as the nature of trust, the failure of Defendants to make withdrawal liability payments, and the calculation of withdrawal liability, interest and liquidated damages under ERISA.

12.  If testimony from local union officials from other regions is necessary, the Fund itself will have these local union officials testify voluntarily, thereby making them available to testify for all purposes.

I declare under penalty of perjury that the foregoing is true and correct.

August 4, 2008

David F. Stupar
Executive Director

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN FLYNN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **No. 1:08-CV-0588-PLF** |
| ) | |
| **JOHN DANIEL BERICH, INDIVIDUALLY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

Upon consideration of the Defendants' Motion to Dismiss or, in the Alternative, to Transfer, Plaintiffs' opposition, and any reply, the Court finds that the Defendants' motion should be denied. **ACCORDINGLY**, it is hereby

**ORDERED**, that Defendants' motion to dismiss, or in the alternative, to transfer be, and it hereby is, **DENIED.**

**SO ORDERED**, this _____ day of _____, 2008.

_____
Paul L. Friedman
United States District Judge

2479380

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN FLYNN, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) No. 1:08-CV-0588-PLF |
| | ) |
| **JOHN DANIEL BERICH, INDIVIDUALLY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## LOCAL RULE 7(K) STATEMENT

Pursuant to Local Rule 7(k), the following persons are entitled to be served with

orders, judgments and stipulations:

> Ira R. Mitzner, Esquire
> Charles V. Mehler III, Esquire
> Dickstein Shapiro LLP
> 1825 Eye Street, N.W.
> Washington, DC  20006-5403

> Mary Lou Smith, Esquire
> Howe, Anderson & Steyer, P.C.
> 815 Connecticut Avenue, NW, Suite 620
> Washington, DC  20006